786 A.2d 176

**C.B. and J.B., on Behalf of R.R.M, Appellees,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant,**

**City of Philadelphia, Department of Human Services, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 30, 2001.

Decided Dec. 18, 2001.

142

Richard Gerson Feder, Philadelphia, for City of Philadelphia, Department of Human Services.

Sheila Oliver, Elkins Park, for C.B. and J.B., on behalf of R.R.M.

Myra Werrin Sacks, Harrisburg, for Department of Public Welfare, appellee.

Frank P. Cervone, Philadelphia, for Support Center for Child Advocates.

Daniel M. Fellin, Myra Werrin Sacks, John A. Kane, Howard C. Ulan, Harrisburg, for Department of Public Welfare, appellant.

Jonathan Jay Houlon, Philadelphia, for Solicitor–City.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

 The Commonwealth Court held that the federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670–76, conflicts with and, therefore, preempts Pennsylvania's Adoption Opportunities Act, 62 P.S. §§ 771–74, to the extent the Pennsylvania Act and accompanying regulations require, where the federal act does not, that a child be in agency custody in order to qualify for an adoption assistance subsidy. This Court granted allocatur to review the Commonwealth Court's invalidation of the Pennsylvania agency custody requirement. Although we find that the Adoption Opportunities Act does not conflict with and is not preempted by the corresponding federal Act, and disapprove of the Commonwealth Court's holding to the contrary, we affirm the court's mandate on the alternative grounds we discuss below.[1]

---

1. This Court may affirm the order of the court below if the result reached is correct without regard to the grounds relied upon by that

R.R.M. was prematurely born on May 26, 1989. Due to medical problems, he remained in the hospital for a period of time and, having been abandoned by his mother, was committed to the care and custody of appellant City of Philadelphia, Department of Human Services (DHS). Upon release from the hospital, R.R.M. was immediately placed in foster care with a family which is unidentified in the record. At this time, DHS's stated goal was to reunite R.R.M. with his biological mother. DHS's efforts at reunification failed, however, and DHS changed its goal for the child to adoption.

On August 6, 1989, DHS placed R.R.M. in the foster care of appellees under the supervision of DHS's Counseling and Care Services. Shortly after placement, R.R.M. had an episode where he stopped breathing and, as a result, he was hospitalized for nine days. R.R.M. returned to appellees' home on an apnea monitor for which appellees received training. After approximately one month with appellees, DHS returned R.R.M. to the original foster parents but then, in May of 1990, returned the child to appellees' care. At that time, R.R.M. was two weeks shy of his first birthday but could not walk, crawl, hold a bottle or feed himself, and he lacked muscle tone.

In August or September of 1990, DHS began the process of terminating the parental rights of R.R.M.'s biological mother and father. In the course of its investigation. DHS's adoption division located R.R.M.'s biological father who expressed an interest in caring for the child. Consequently, DHS again changed its goal to reunification. Ultimately, the efforts to reunite R.R.M. with his biological father failed.

In the early part of 1992, R.R.M. experienced myriad medical problems including febrile seizures, hypergag reflex, asthma and nosebleeds. Appellees were concerned that DHS might move R.R.M. from one foster home to another, which might compromise his health and development in light of his special medical needs. Accordingly, appellees notified DHS that they were interested in adopting R.R.M. DHS informed

court. *See Moorhead v. Crozer Chester Medical Center,* 564 Pa. 156, 765 A.2d 786, 787 n. 2 (2001) (citing *Pennsylvania Game Comm'n v. State Civil Service Comm'n (Toth),* 561 Pa. 19, 747 A.2d 887, 888 n. 1 (2000)).

appellees that the child was ineligible for adoption because his biological father was involved in his life.

DHS and appellees then explored the possibility of DHS awarding legal custody or temporary legal custody to appellees in lieu of adoption. The benefit of some form of legal custody, according to DHS, was that appellees would no longer need the approval of DHS and R.R.M.'s biological father to make needed medical decisions. Appellees did not have legal counsel at this point in the proceedings, and DHS did not inform appellees of the availability of adoption assistance subsidies or that accepting legal custody of R.R.M. would end any entitlement they might have to such subsidies. Furthermore, at the time appellees accepted temporary legal custody of R.R.M., they understood that he was not **eligible** for adoption because his biological father still maintained parental rights. DHS's stated goal for R.R.M. at the time of the discussions about legal custody was reunification with the biological father. Meanwhile, DHS has admitted that awarding temporary legal custody of a child to foster parents makes reunification less likely.

Despite DHS's seemingly contradictory aims regarding R.R.M., the agency, appellees, and R.R.M.'s biological father reached an agreement regarding temporary legal custody. The Philadelphia Court of Common Pleas issued a Dependency Review Order on September 2, 1992, memorializing the agreement and discharging the child's formal commitment to DHS. The order stated that appellees were awarded "temporary legal custody" and that the matter could be relisted "upon application." However, no further review of the child's status was conducted.[2]

Over the next five years, appellees had no further contact with DHS. In 1994 or 1995, upon appellees' request, R.R.M.'s biological father consented to appellees' adopting the child.

---

**2.** The absence of follow-up review hearings after the award of **temporary** legal custody was contrary to the then-applicable provisions of the Juvenile Act. See 42 Pa.C.S. § 6351(e) (requiring disposition review hearings after award of temporary legal custody). Section (e) was subsequently rewritten by Act 126 of 1998.

On November 10, 1997, appellees applied to DHS for an adoption assistance subsidy.[3] DHS promptly denied the request three days later, on November 13, 1997, on the grounds that R.R.M. was not in the legal custody of a county agency or other state-approved agency, as required under its strict reading of the Adoption Opportunities Act, 62 P.S. § 772 (" 'Eligible child' means a child in the legal custody of local authorities where parental rights have been terminated") and corresponding regulations, 55 Pa.Code § 3140.202(b) (to be certified for adoption assistance, child must, *inter alia*, be in legal custody of county agency or another agency approved by the Department of Public Welfare). Accordingly, DHS apparently considered appellees' proposed adoption of R.R.M. to be the equivalent of a private adoption, notwithstanding that R.R.M. was initially placed in the care and custody of DHS, that he was then placed with appellees as a foster family under the auspices of DHS, and that appellees sought temporary legal custody, thus changing R.R.M.'s status, precisely because DHS had informed them that R.R.M. was not at that time eligible to be adopted.

Appellees filed a timely appeal of the denial with appellant Pennsylvania Department of Public Welfare (DPW). On April 29, 1998, DPW denied the appeal and appellees appealed further to the Commonwealth Court. In the meantime, appellees had filed an adoption petition in the Court of Common Pleas of Philadelphia County on December 29, 1997. That court terminated the parental rights of R.R.M.'s biological parents on January 23, 1998, and ordered that R.R.M. remain in appellees' custody pending adoption.

A divided panel of the Commonwealth Court reversed the DPW on the question of appellees' entitlement to adoption assistance funds. The panel majority issued a sweeping decision striking down the Adoption Opportunities Act to the

3. According to DHS, adoption assistance consists of ongoing support payments by the county to the adopting family, designed to help defray the cost of supporting the child to age 18. The county is partially reimbursed for the payments to eligible families by the federal government, and by the state government for 80% of the amount not reimbursed by the federal government, subject to available appropriations.

extent it requires that a child be in the legal custody of local authorities to be eligible for adoption assistance payments. The panel majority found that the Pennsylvania statute conflicts with the federal Act to the extent it requires agency custody and, therefore, invalidated the state act on federal preemption grounds:

Congress stated that its purpose in enacting the Federal Law was to enable each state "to provide ... adoption assistance for children with special needs." 42 U.S.C. § 670. This statement of purpose does not limit adoption assistance to special needs children in the legal custody of a county agency or other state-approved agency. Moreover, the provision of the Federal Law dealing specifically with the adoption assistance program states: "Each State having a plan approved under this part shall enter into adoption assistance agreements ... with the adoptive parents of children with special needs." 42 U.S.C. § 673(a)(1)(A). The state is not directed to enter into adoption assistance agreements only with adoptive parents of special needs children in the legal custody of a county agency or other state-approved agency. Therefore, we conclude that our state adoption assistance law conflicts with the Federal Law to the extent that it withholds adoption assistance payments from special needs children who are not in the legal custody of a county agency or other state-approved agency.

*Barczynski v. Department of Public Welfare,* 727 A.2d 1222, 1225 (Pa.Cmwlth.1999).

Then–President Judge Colins dissented. Judge Colins acknowledged that appellees had unselfishly assumed legal custody of R.R.M. "in an effort to ensure his best interests and to provide him with a stable home life." He nevertheless opined that Pennsylvania law simply made no provision for adoption subsidies where the child has been removed from the custody of local authorities. The dissent further concluded that the state legislative requirement of agency custody did not conflict with the federal law because, even though the federal act did not explicitly set forth a requirement of agency custody, it certainly suggested, both by its terms and its legislative

history, that assistance should be provided only to children in agency custody.

■ This Court granted.review to DHS and DPW to consider the Commonwealth Court's determination that the Pennsylvania agency custody requirement was preempted by the federal law, and to consider related issues implicated by that far-ranging decision. The standard of review in a case involving the proper interpretation and interplay of statutes is clear: these are questions of law subject to plenary review. *Wagner v. Wagner,* 564 Pa. 448, 768 A.2d 1112, 1115 n. 2 (2001), *citing Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

The federal Adoption Assistance and Child Welfare Act of 1980 requires that states with plans approved under the federal act "shall enter into adoption assistance agreements . . . with the adoptive parents of children with special needs." 42 U.S.C. § 673(a)(1)(A). Section 673 lists several requirements a child must meet to be eligible for adoption assistance, only one of which is at issue in this appeal—*i.e.,* that "the child has been determined by the state, pursuant to subsection (c) of this section, to be a child with special needs." *Id.* at § 673(a)(2). Subsection (c) defines children with special needs as follows:

(c) Children with special needs

For purposes of this section, a child shall not be considered a child with special needs unless—

(1) the State has determined that the child cannot or should not be returned to the home of his parents; and

(2) the State had first determined (A) that there exists with respect to the child a specific factor or condition (such as his ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental or emotional handicaps) because of which it is reasonable to conclude that such child cannot be placed with adoptive parents without providing adoption assistance under this section or medical assistance under subchapter XIX of this chapter, and (B) that except

where it would be against the best interests of the child because of such factors as the existence of significant emotional ties with prospective adoptive parents while in the care of such parents as a foster child, a reasonable, but unsuccessful effort has been made to place the child with appropriate adoptive parents without providing adoption assistance under this section or medical assistance under subchapter XIX of this chapter.

*Id.* at § 673(c).

Pennsylvania's Adoption Opportunities Act, and the regulations promulgated under that Act, set forth the state's eligibility criteria for adoption assistance. The Act provides that:

"Eligible child" means a child in the legal custody of local authorities where parental rights have been terminated . . . and such child has been in foster placement for a period of not less than six months and where the child has been shown to be a difficult adoption placement because of a physical and/or mental handicap, emotional disturbance, or by virtue of age, sibling relationship, or ethnicity. A child in the legal custody of an agency approved by the department shall be an eligible child if the child is certified as eligible by the local authorities.

62 P.S. § 772. Regulations promulgated by the DPW further provide:

Child eligibility.

(a) The county children and youth social service agency (county agency) is the sole authority for certifying a child's eligibility for adoption assistance.

(b) The county agency shall certify for adoption assistance children whose placement goal is adoption and who meet the following requirements:

(1) The child is 17 years of age or younger.

(2) Parental rights have been terminated under 23 Pa.C.S. Part III (relating to the Adoption Act).

(3) The child is in the legal custody of the county agency or another agency approved by the Department.

(4) The child shall have at least one of the following characteristics:

(i) A physical, mental or emotional condition or handicap.

(ii) A genetic condition which indicates a high risk of developing a disease or handicap.

(iii) Be a member of a minority group.

(iv) Be a member of a sibling group.

(v) Be 5 years of age or older.

55 Pa.Code § 3140.202.

■■■■ The question of preemption is a question of Congressional intent. *California Federal Savings and Loan Ass'n v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). Thus, the United States Supreme Court has held that a federal statute preempts state law: (1) where Congress indicates such an intention in express terms; (2) where the intent to preempt may be inferred from a "scheme of federal regulation . . . . sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation;" and (3) where, in instances in which Congress has not evinced an intent to completely displace state regulation of a subject, there is nevertheless an "actual conflict" between the federal and state provisions. *Id. See also Cellucci v. General Motors Corp.*, 550 Pa. 407, 706 A.2d 806, 809–810 (1998); *First Federal Savings and Loan Ass'n v. Office of State Treasurer*, 543 Pa. 80, 669 A.2d 914, 916 (1995). With respect to the third basis for finding preemption, which is the basis that was identified by the Commonwealth Court panel majority here, " '[a] conflict will be found when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' " *Cellucci*, 706 A.2d at 809, *quoting, Freightliner Corp. v. Myrick*, 514 U.S. 280, 289, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (further citation omitted). *Accord California Federal*, 479 U.S. at 281, 107 S.Ct. 683.

■■ In light of these principles, we have no difficulty in concluding that the Commonwealth Court panel majority

erred in holding that the two Acts conflict and that the federal Act therefore preempts the state Act. As Judge Colins' well-reasoned dissent below explained, there is no unavoidable tension between the two Acts:

> Although, unlike Pennsylvania law, the Child Welfare Act does not specify that a child be in agency custody in order to be eligible for adoption assistance, both the statute, by its terms, and its history contemplate providing assistance only to children in state custody. The federal law refers to a state's "placement" of a "foster child" for adoption and requires that the state agency determine that the child cannot be placed for adoption because of specified factors and/or conditions, after the agency has made an unsuccessful effort to place the child with adoptive parents.
>
> The legislative history of the Child Welfare Act of 1980 supports the conclusion that only children in agency custody are eligible for adoption assistance. The Senate Finance Committee report states that, "under the adoption subsidy program, a State would be responsible for determining which children in the State in foster care would be eligible for adoption assistance because of special needs which discourage adoption." [S.Rep. No. 96–336, at 2 (1980).] In its general discussion of the bill, the committee stated that although
>
>> assistance to children in foster care has been of significant benefit over the years since it was originally enacted in 1961 ... it would be desirable to ... deemphasize the use of foster care and encourage greater efforts to place children in permanent homes. For this reason, the committee has made certain changes in the foster care provisions and has also adopted a new program of federally aided adoption assistance for children who would otherwise continue in foster care.... [*Id.* at 12.]

*Barczynski*, 727 A.2d at 1226–27 (Colins, P.J., dissenting) (footnotes omitted).

Contrary to the panel majority's opinion, we find that it is not impossible to comply with both the state and the federal law, nor does the state law present an obstacle to what the

federal law attempts to accomplish. The references in the federal Act to "placement" of a foster child, as well as the references in the legislative history to a desire to encourage adoption over foster care, strongly suggest that the federal Act was intended to benefit children in the foster care system by making it easier for them to be placed in permanent homes. Furthermore, it is apparent that Congress contemplated agency custody as a proper measure of eligibility for adoption assistance, even if it did not expressly **require** such custody under the Act. Equally compelling is the fact that Congress expressly allowed the states participating in the federal program leeway to determine themselves, within certain broad parameters, which children have special needs and are therefore eligible for adoption assistance subsidies; the granting of such leeway hardly reveals an intent to restrict the states in the procrustean fashion that the Commonwealth Court panel majority concluded.

The General Assembly's definition of children with special needs as those who, among other things, are in agency custody is fully consonant with the federal Act. That definition ensures that federal subsidies will be available where the need is greatest *i.e.*, to children who are the most difficult to place in adoptive homes. It was entirely reasonable for the General Assembly to conclude that those children actually involved in the state foster care system, and who also have designated special needs, are the most difficult to place. It was equally as reasonable for the General Assembly to conclude that private adoption agencies placing children are less likely to face a shortage of prospective parents ready, willing and financially able to adopt children, including special needs children. Nothing in the federal Act or its legislative history suggests that it was intended to **require** states to provide assistance to facilitate adoptions in the latter situation, yet that is what the Commonwealth Court panel majority's conclusion below would logically entail. Accordingly, for all of these reasons, we hold that the Pennsylvania Act's requirement of agency custody does not conflict with the federal Act and, therefore, the requirement is not preempted.

■ Our conclusion that the Commonwealth Court erred in striking down the agency custody requirement of the Pennsylvania Act does not bring this case to an end because appellees forwarded narrower, non-constitutional claims that the Commonwealth Court failed to reach before embarking on its preemption analysis. It is well-settled, of course, that, "[w]hen a case raises both a constitutional and a nonconstitutional issue, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds." *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174, 176 (1999). *See also Wertz v. Chapman Twshp.*, 559 Pa. 630, 741 A.2d 1272, 1274 (1999) ("It is axiomatic that if an issue can be resolved on a non-constitutional basis, that is the more jurisprudentially sound path to follow."). The Commonwealth Court observed this principle only in the breach; its precipitous striking of the agency custody requirement was particularly ill-advised since it did not first consider non-constitutional grounds for decision.

■ With respect to appellees' non-constitutional arguments, this case is unusual in that both appellants go to some length to acknowledge the strength of appellees' claim based upon the unusual circumstances presented here—albeit appellants stop short of actually conceding the issue. Thus, in the words of DHS, the situation here is "exceptional and compelling" in appellees' favor. This is so not only because of the equitable circumstance posed by appellees' selfless act in assuming the care of a child with significant medical and social needs, without any compensation from the state, but also because the child here **was** in agency custody, and would not have been in appellees' temporary legal custody *"but for* the child's *prior* agency custody" and but for appellees' prior role as foster parents through agency placement. Brief for Appellant DHS at 14 (emphasis original).

Based upon these unique circumstances, appellees had argued to the Commonwealth Court—and they repeat the arguments here—that they should be deemed eligible for adoption assistance because DHS failed to discharge its duty to inform

them, at the time their status as foster parents ended and temporary legal custody was vested in them, that adoption assistance would be available if R.R.M. remained in the technical custody of DHS, but would terminate if the child was transferred to their custody, even if it the transfer only involved temporary legal custody. Appellees also argued that R.R.M. should be deemed to have remained in agency custody since he was adjudicated dependent by the court, and DHS therefore erred in placing him in the temporary legal custody of appellees where he remained in a custody limbo, with no court or agency follow-up or assistance, notwithstanding the absence of any permanent placement and notwithstanding the requirements of the Juvenile Act. In a related vein, appellees also argued that R.R.M. should be deemed to be in agency custody because DHS had no legal right to relinquish custody of him entirely, and thus DHS retained responsibility for the child until his adoption was complete.

With no less commendable candor than DHS, appellant DPW acknowledges that the failure of DHS or the Court of Common Pleas to review the status of the child for more than five years might warrant relief short of invalidating the agency custody requirement. DPW also stresses just how unusual the circumstances are here, noting that the failure of the agencies and court to provide any oversight or monitoring of this child's custodial arrangement is highly unlikely to recur under the Adoption and Safe Families Act of 1997, 42 U.S.C. § 671 *et seq.*, and correlative revisions to the Juvenile Act, which became effective on December 15, 1998. The revised Juvenile Act requires continuing permanency hearings every six months until the agency relinquishes jurisdiction or the child is returned home in any case where a child is adjudicated dependent and placed in a temporary situation. Had the current version of the Juvenile Act been in effect when R.R.M. was placed with appellees, his custodial situation would have been reviewed twice a year until his adoption by appellees. As argued by DPW:

[R.R.M.'s] transfer of custody to a nonrelative, coupled with the removal of his case from periodic judicial review of

required permanency goals are not options under current law. [U]nder current state and federal law, a child remaining in "temporary legal custody" for more than five years would be highly improbable. . . .

The unreviewed "temporary" disposition of [R.R.M.] over more than a five year period produced the denial of adoption assistance because he remained outside the agency custody requirement of the Adoption Opportunities Act. These facts should not invalidate a state statute that effects the goal of the [federal Adoption Assistance Act]. If this Court finds that under the extraordinary facts of this case, relief is warranted on equitable grounds, such relief should be afforded to [appellees], but there is no warrant for invalidation of a state statute that fully conforms to the requirements of applicable federal law.

Brief of Appellant DPW at 14–5.

The next question for this Court becomes whether we should remand the matter for the Commonwealth to consider appellees' non-constitutional claims in the first instance or whether we should resolve them now. We believe the latter course is appropriate. The very nature of this case, involving the proper legal status of a child and entitlement to funds necessary for his care, militates in favor of a final resolution without further delay. In addition, the interests of judicial economy would be better served by resolving the matter now. More importantly, the arguments on the question have been well and candidly forwarded, on all sides, so as to facilitate this Court's immediate resolution.

An award of adoption assistance to appellees here is consistent with the agency custody requirement of the Pennsylvania Act. This case does not resemble a private adoption in the least; rather, R.R.M. unquestionably began in agency custody, was placed in the foster care of appellees through that agency, was adjudicated dependent, and was a child of special needs who, it is undisputed, otherwise qualified for an adoption assistance subsidy. It is not clear that the **temporary** legal custody designation and subsequent non-involvement of DHS, the propriety of which is subject to serious question, exhaust-

ed all of the state's custodial rights over, or responsibilities to, this child. *See In re G.C.*, 558 Pa. 116, 735 A.2d 1226, 1229 (1999) (Opinion in Support of Affirmance) ("it is the responsibility of the agency, not the foster parents, to seek a permanent home for the child") (summarizing holding in *In re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146 (1984)). Certainly, we cannot allow the mere designation to cloud our understanding of what actually happened here, particularly in light of the non-permanent placement with appellees.

While appellees here were not technically designated as foster parents during the period when they had temporary legal custody of the child, neither did the placement with them permanently resolve the question of legal custody of R.R.M. Appellees had no permanent custody rights, the child's biological father maintained his parental rights and, therefore, had the right to seek reunification with his child until those rights were terminated by the court in 1998, and DHS presumably had the power to seek to remove the child from appellees' custody to effect such a reunification. The September 2, 1992, order, like a foster placement, placed R.R.M. with appellees for a limited time only, not permanently, and that custody presumably was subordinate to the right of the agency and the child's biological father. Indeed, DHS still considered reunification with the biological father as the long-term goal for the child when temporary legal custody was awarded to appellees. Implicit in a grant of temporary custody is a recognition that some other entity possesses residual control over the child. Furthermore, the parties agree that the grant of temporary legal custody in this case was a matter of convenience intended to allow appellees to make decisions regarding R.R.M.'s continuing medical treatment needs, without having to first obtain the consent of DHS and the biological father. Appellees were never advised that a consequence of this designation arranged solely to better meet the child's special needs would be to forever disentitle them to adoption assistance based upon a strict definition of "custody." In sum, under appellants' own understanding of the proper purposes of the federal

and state acts, this is precisely the sort of adoption those statutes were designed to encourage and support. In light of the totality of these admittedly unique circumstances, we conclude that R.R.M. effectively was, or should be deemed to have been, in the legal custody of DHS so as to satisfy the requirements of the Adoption Opportunities Act.

For the foregoing reasons, we reject the Commonwealth Court's holding that the agency custody requirement contained in Pennsylvania's Adoption Opportunities Act conflicts with, and is preempted by, the federal Adoption Assistance and Child Welfare Act of 1980. This Court nevertheless affirms the order of the Commonwealth Court reversing the decision of the DPW, which had denied an adoption assistance subsidy to appellees, on the alternative grounds discussed in this Opinion.

Justice NEWMAN did not participate in the consideration or decision of this case.

Justice CAPPY concurs in the result.