225 F.Supp.2d 292 (2002)
Daniel and Barbara GLANOWSKI, Richard and Judith Zygmunt, and Diane Courter, individually and on Behalf of All Others Similarly Situated, Plaintiffs,
v.
The NEW YORK STATE DEPARTMENT OF FAMILY ASSISTANCE, Formerly Known as The New York State Department of Social Services and John A. Johnson, As Commissioner of The New York State Office of Children and Family Services, Defendants.
No. 00-CV-0364C(SR).
United States District Court, W.D. New York.
September 18, 2002.
*293 McGrath & Polvino, (Donald G. McGrath, of counsel), Buffalo, NY, Kenney, Canaley, Shelton & Liptak, LLP, (Stephen F. Szymoniak, of counsel), Buffalo, NY, for plaintiffs.
Eliot Spitzer, Attorney General of the State of New York, (Kim S. Murphy, Assistant Attorney General, of counsel), Buffalo, NY, for defendants.

INTRODUCTION
CURTIN, District Johnson.
Daniel and Barbara Glanowski, Richard and Judith Zygmunt, and Diane Courter ("plaintiffs") are adoptive parents who have "adopted children privately rather than through an agency of the State of New York or a County." Item 1, ¶ 26. They claim they have adopted "children with `special needs' as the term special needs is defined in the Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 620, et. seq., in particular, 42 U.S.C. § 673." Id., ¶ 3. On May 2, 2000, plaintiffs filed suit against the New York State Department of Family Assistance ("DFA") and John A. Johnson, as Commissioner of the New York State Office of Children and Family Services ("State defendants" or "State"). Id. By way of this lawsuit, plaintiffs challenge the DFA policy that "adoptions involving children placed privately are not eligible for assistance under the Adoption Assistance Program 42 U.S.C. § 673." Id., ¶ 20.[1] Plaintiffs' lawsuit is cast as a class action, where members of the class are "those individuals who have privately adopted special needs children in the State of New York." Id., 11 ¶ 21.
Plaintiffs have asserted five causes of action. The first cause of action alleges that the New York State policy conflicts with the stated purpose of the Adoption Assistance Program; and to the extent that § 451(1) of the Social Services Law ("SSL") results in denial of benefits to privately adopted special needs children, it is without effect pursuant to the Supremacy Clause of the United States Constitution. Id., ¶ 35. Plaintiffs also allege that the State defendants' failure to comply with the Adoption Assistance Program deprives class members of rights, privileges, and immunities secured by the Constitution, in violation of 42 U.S.C. § 1983. Plaintiffs thus seek a declaratory judgment that the State defendants' denial of adoption subsidy benefits to privately adopted children with special needs conflicts with federal law and is unconstitutional. Id., ¶¶ 37, 38.
In their second cause of action, plaintiffs seek injunctive relief directing the State *294 defendants to comply with the Adoption Assistance Program and to cease denying adoption assistance benefits for children with special needs who have been privately adopted. Id., ¶ 44. In their third cause of action, plaintiffs seek to have adoption assistance payments made retroactive to the first instance when each privately adopted special needs child became eligible for such benefits. Id., ¶ 46. Plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988(b) as their fourth cause of action, and establishment of a common fund for payment of retroactive adoption assistance benefits and attorneys' fees and costs as their fifth cause of action. Id., ¶¶ 48, 50.
Presently before the court are cross-motions for summary judgment. The State defendants filed their motion on December 15, 2000, Item 24; and on June 11, 2001, plaintiffs filed a cross-motion for summary judgment and to certify the class. Item 35.
For the reasons that follow, the State defendants' motion for summary judgment is granted, and plaintiffs' cross-motion for summary judgment and for class certification is denied.

FACTS

I. The Named Plaintiffs

A. The Glanowskis
Daniel and Barbara[2] Glanowski have adopted "7 children with special needs:" Gabrielle (DOB 11/28/93) "has Down Syndrome, Seizer disorder and Microcephaly." Halee (DOB 6/1/94) "has Down Syndrome." Rebekah (DOB 5/31/95) "has Down Syndrome, diabetes, a heart defect and Celiac disease." Emma (DOB 8/21/99) has Down Syndrome and a heart defect. Davin (DOB 12/24/95) "had serious VCFS syndrome and is now deceased." Although Davin was adopted through an agency, the Glanowskis were "never able to fully process [their] application for subsidy benefits." Kamryn (DOB 3/26/01) "has VCFS syndrome and a severe heart defect." They have also adopted Anastasia. The Glanowskis receive SSI benefits for Gabrielle, Halee, Rebekah, and Emma. An SSI application is pending for Kamryn, and Anastasia is not SSI eligible. Item 35, Glanowski Aff., ¶ 3.
The Glanowskis assert: "We have not applied for adoption subsidy benefits for all our children. This is because we were repeatedly informed that since our children were adopted privately, we would not be entitled to benefits despite their SSI eligibility." Id., ¶ 4. Richard Rio at the DFA told them that because their children were privately adopted, "they would be no more eligible for benefits than if we adopted children from Russia." Id., ¶ 5. They also assert that on several occasions, they requested applications for adoption subsidies. However, New York State refused to provide them, stating that their children were not eligible because they had been adopted privately. Id., ¶ 6. As exhibits to their affidavit, they provided two letters they had written to the then-New York State Department of Social Services[3] *295 in March and September 1999 inquiring about subsidies under the Title IV-E adoption assistance program, and urging that the position taken by New York State denying such assistance to people who adopt privately was incorrect. Item 35, Ex. B. The Glanowskis also provided a letter from the Assistant Director of the New York State Adoption Service, dated November 10, 1999, which set forth the State's position that "[a]n adoption involving children placed privately is not Title IV-E eligible because the child is not a child with special needs as defined in section 473(c)[4] of the Social Security Act. In addition, the child does not satisfy the State's definition of a child set forth in section 451(1) of Social Services Law." Id., Ex. C.

B. The Zygmunts
Richard and Judith Zygmunt assert that they have adopted three children with "special needs:" Ryan (DOB 10/24/79) "has Down's Syndrome and vision problems;" Kaylee (DOB 3/17/89) "has Down's Syndrome, Malacia and respiratory problems;" and Noah (DOB 4/1/90) "has vision problems, has asthmatic bronchitis and speech difficulties." Item 35, Zygmunt Aff., ¶ 3. Ryan, now over 21 years old, receives SSI benefits directly. Kaylee received SSI benefits before adoption, but the Zygmunts were denied further SSI benefits after adoption based on the level of their "unearned income." They claim that Kaylee was "SSI eligible at the time of adoption." They were also denied further SSI benefits after adopting Noah based on their income level and assert that Noah, too, was SSI eligible at the time of adoption. Id.
The Zygmunts explain that they had not formerly applied for adoption subsidies for their adopted children because they were informed that privately adopted children were not eligible. They state that their "main concern was to bring our children home with us as soon as possible regardless of the availability of benefits." Id., ¶ 5.

C. Diane Courter
Diane Courter adopted four children with "special needs." Joshua (DOB 10/5/79) was born with Down Syndrome and a heart defect known as Tetralogy of Fallot. Joshua died in 1981 due to complications following open heart surgery. Eric (DOB 3/6/82) was born with Down Syndrome and a heart defect known as AV Canal. Eric died in 1985, also due to complications following open heart surgery. Caitlin (DOB 7/2/84) was born with Down Syndrome and developed Cerebral Palsy after suffering a stroke and other birth trauma-related complications. Caitlin is wheelchair bound, is unable to talk, and uses an electronic speech device. She requires complete care for all of her needs. Erin (DOB 7/19/89) has Down Syndrome and required open heart surgery in September 1990. She is mentally retarded and has learning and speech difficulties. Ms. Courter receives SSI benefits for Caitlin and Erin, and received SSI benefits for Joshua and Eric. Item 35, Courter Aff., ¶ 3.
Ms. Courter asserts that she had been informed by home study investigators and others that adoption subsidy is not available to children adopted privately, which is why she did not apply for benefits. Id., ¶ 4.

*296 II. The Federal Statute
The Adoption Assistance Program, 42 U.S.C. § 673 (or SSA § 473), is a cooperatively run federal-state program through which the federal government provides participating states with funding to advance the adoption of special needs children. The program requires that states with plans approved under the federal act "shall enter into adoption assistance agreements ... with the adoptive parents of children with special needs." 42 U.S.C. § 673(a)(1)(A). Section 673 lists several requirements a child must meet to be eligible for adoption assistance, only one of which is at issue in this case, i.e., that "the child has been determined by the state, pursuant to subsection (c) of this section, to be a child with special needs." 42 U.S.C. § 673(a)(2).
The statute defines a child with special needs as follows:
[A] child shall not be considered a child with special needs unless
(1) the State has determined that the child cannot or should not be returned to the home of his parents; and
(2) the State had first determined (A) that there exists with respect to the child a specific factor or condition (such as his ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental, or emotional handicaps) because of which it is reasonable to conclude that such child cannot be placed with adoptive parents without providing adoption assistance under this section ... and (B) that, except where it would be against the best interests of the child because of such factors as the existence of significant emotional ties with prospective adoptive parents while in the care of such parents as a foster child, a reasonable, but unsuccessful, effort has been made to place the child with appropriate adoptive parents without providing adoption assistance under this section....
42 U.S.C. § 673(c).
The statute clearly delegates to the states the responsibility for making eligibility determinations for "special needs" adoption assistance.

III. The State Statute
Since 1968, New York has had a program in place to provide financial support for adopted children. Its adoption subsidy program for qualifying handicapped and hard-to-place children was added in 1977. Item 28, ¶¶ 9, 10. The intent of the New York legislature in enacting the adoption subsidy program is found in SSL § 450:
The legislature intends, by the enactment of this title, to promote permanency of family status through adoption for children who might not otherwise derive the benefits of that status. By providing for an adoption subsidy program which will be applied uniformly on a statewide basis, the legislature also intends to eliminate, or at the very least substantially reduce, unnecessary and inappropriate long-term foster care situations which have proven financially burdensome to the state and, more importantly, inimical to the best interests of many children who have not been placed for adoption because of emotional or physical handicaps, age or other factor, in accordance with regulations of the department.
To determine whether a "handicapped[5]" *297 or "hard to place[6]" child is eligible for the adoption subsidy program, such a person *298 must fit within the definition of "child" set forth in SSL § 451(1):
"Child" shall mean a person under the age of twenty-one years whose guardianship and custody have been committed to a social services official or a voluntary authorized agency, or whose guardianship and custody have been committed to a certified or approved foster parent pursuant to a court order prior to such person's eighteenth birthday. A `child' shall also mean a person under the age of twenty-one years whose care and custody have been transferred prior to such person's eighteenth birthday to a social services official or a voluntary authorized agency pursuant to section one thousand fifty-five of the family court act or section three hundred eighty-four-a of this chapter, whose parents are deceased or where one parent is deceased and the other parent is not a person entitled to notice pursuant to section one hundred eleven-a of the domestic relations law, and where such official or agency consents to the adoption of such person in accordance with section one hundred thirteen of the domestic relations law.
(Emphasis added). To capsulize this definition, for the purpose of the adoption subsidy program, a child includes a person, under the age of twenty-one:
(A) whose custody and guardianship has been transferred before the person's 18th birthday to a social services district or a voluntary authorized agency, as defined in SSL § 371(10); or
(B) whose custody and guardianship has been transferred before the person's 18th birthday to a foster parent of the child; or
(C) where care and custody have been transferred to either a social services district or a voluntary authorized agency where the child's parent(s) whose consent to the adoption of such child pursuant to DRL § 110 are deceased.
Item 28, ¶ 18. This definition of child (which is key to eligibility for the federal program) clearly envisions that the child have some involvement with the state either via a local social services district, a non-public voluntary authorized agency, or foster parents.
Thus, New York's adoption subsidy program provides financial assistance in the form of a maintenance subsidy and medical support for the adoption of handicapped or hard to place children, provided that they meet the definition of "child," as set forth in SSL § 451(1).
In addition, the New York statute provides a strict time frame during which applications for adoption subsidies are to be made. SSL § 453(1)(d) provides that "Applications for such subsidies shall be accepted prior to the commitment of the guardianship and custody of the child to an authorized agency pursuant to the provisions *299 of this chapter, and approval thereof may be granted contingent upon such commitment" (emphasis added)[7].
New York provides for two categories of adoptions: "private placement adoptions and adoptions from authorized agencies. A private placement adoption is defined in Domestic Relations Law (DRL) § 109(5) to mean any adoption other than that of a minor who has been placed for adoption by an authorized agency." Item 28, ¶ 3. An authorized agency is defined in SSL § 371(10) to include (a) a non-public agency, referred to as a voluntary authorized agency, with the corporate authority to place out children for adoption as approved by OCFS; (b) a social services district, such as the Erie County Department of Social Services; (c) an Indian tribe with an agreement with OCFS to operate an adoption program; and (d) an out of state corporation which places foreign born children into New York and is licensed in its home state.
In an adoption by an authorized agency, "the authorized agency assumes custody and guardianship of a child through a voluntary surrender ... or as the result of the involuntary termination of parental rights.... In addition the adoptive parents are approved by the authorized agency prior to the placement of the child for adoption." Item 28, ¶ 7. In contrast, the plaintiffs in this action adopted by means of private placement adoptions. "Neither the State nor an authorized agency was involved in the care or placement of the children in this litigation; the decisions of the birth parents to place their children for adoption; the suitability of the adoptive parents; or the decision by the adoptive parents to adopt the children." Id., ¶ 4.

DISCUSSION

I. Standard for Summary Judgment
Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir.2001), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under the rule, the burden is on the moving party to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party must come forward with "`specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).
There are no disputes of material fact on this motion. The parties' dispute centers on the application of the Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 620, et seq., in particular, 42 U.S.C. § 673 and New York Social Services Law § 451. Thus, the issues are ripe for summary judgment.

II. Analysis
The plaintiffs' and defendants' arguments focus, for the most part, on the *300 definition of the term "children with special needs" under Title IV-E, a definition which in turn relies upon New York Social Services Law. Plaintiffs assert that Congress did not restrict that eligibility to special needs children in the legal custody of a county agency or other state-approved agency, and to the extent that the state's definition of "child," set forth in SSL § 451(1), results in denial of benefits to privately adopted special needs children, it conflicts with the federal Adoption Assistance Program and is without effect pursuant to the Supremacy Clause of the Constitution.
Plaintiffs also argue that § 673 does not require a child to have been in the custody of a state agency before that child may be deemed a child with special needs and entitled to federal adoption assistance. They interpret the January 23, 2001 Policy Announcement, infra, which states that a child is eligible for benefits under the Act if it is eligible for supplemental security income (SSI) benefits and meets the definition of a child with special needs, as requiring simply that when children are adopted they only need to be SSI eligible. Item 36, p. 5. They conclude that "[a]ll the named plaintiffs have some adopted children now receiving SSI benefits and thus, that criterion is satisfied." Id., p. 6. They charge that the State does not follow the Act, and has in fact set additional eligibility criteria not contained in the Act, which runs afoul of the federal law. Plaintiffs also consider the State's wrongful denial of benefits as an "extenuating circumstance" warranting post-adoption grant of subsidies. Id.
Defendants counter that Title IV-E provides the states with broad discretion to determine eligibility for adoption assistance, and that New York's plan, continuously funded since the Act's inception, is consistent with the purpose and intent of Title IV-E. They argue that plaintiffs' children do not satisfy the federal definition of "special needs" set forth in § 673(c), and thus the preemption claim should be dismissed as a matter of law. Defendants further assert that because the State program is consistent with Title IV-E, and that there is no provision that a state must provide adoption assistance to privately adopted children, plaintiffs cannot assert any violation of their rights, and in any case, there is no private right of action under Title IV-E or for plaintiffs' 42 U.S.C. § 1983 claims. Lastly, the State maintains that claims for retroactive benefits are barred by the Eleventh Amendment. Item 25, pp. 22-23.
Although the court has sympathy with the plaintiffs' position, and commends them for their compassionate and generous actions in adopting their children, it is clear that their position that they should be entitled to federal adoption benefits finds no support in either the federal or state statute or from any of the policy announcements that have clarified the federal statute's reach.

A. Preemption
The question of preemption is a question of Congressional intent. California Federal Savings & Loan Ass'n v. Guerra, 479 U.S. 272, 280-81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). The Supreme Court has held that a federal statute preempts state law (1) where Congress indicates such an intention in express terms; (2) where the intent to preempt may be inferred from a "scheme of federal regulation ... sufficiently comprehensive to make reasonable the inference that Congress `left no room' for supplementary state regulation"; and (3) where, in instances in which Congress has not evinced an intent to completely displace state regulation of a subject, there is nevertheless an "actual conflict" between the federal and *301 state provisions. Id. at 281, 107 S.Ct. 683 (citation omitted).
Plaintiffs' contentions herein concern the third preemption category. In such a case, "[a] state statute `directly conflicts' with federal law when: (1) compliance with both federal and state regulations is a `physical impossibility' ... or (2) the state law stands as an obstacle to the execution of the full purposes and objectives of Congress." Hardy v. New York City Health & Hospital Corp., 164 F.3d 789, 795 (2d Cir.1999) (quotations and citations omitted). Plaintiffs do not assert that any "physical impossibility" prevented them from complying with both the federal and state regulations; their arguments instead are geared toward showing that the state law obstructs the full purposes and objectives of Title IV-E.
In light of these principles, this court has no difficulty concluding that the federal statute does not preempt the state statute.
First, the federal statute's statement of purpose indicates that the Act was conceived to assist states in determining which children in State foster care would be eligible for adoption assistance because of special needs.[8] Clearly, the thrust was to help parents willing to adopt special needs children who were in foster care so they would be removed from the public fisc. The Supreme Court of Pennsylvania ruled on a similar preemption challenge brought by parents who were denied adoption assistance,[9] and who then asserted that the state law conflicted with the federal law. The court held:
The references in the federal Act to "placement" of a foster child, as well as the references in the legislative history to a desire to encourage adoption over foster care, strongly suggest that the federal Act was intended to benefit children in the foster care system by making it easier for them to be placed in permanent homes. Furthermore it is *302 apparent that Congress contemplated agency custody as a proper measure of eligibility for adoption assistance, even if it did not expressly require such custody under the Act. Equally compelling is the fact that Congress expressly allowed the states participating in the federal program leeway to determine themselves, within certain broad parameters, which children have special needs and are therefore eligible for adoption assistance subsidies; the granting of such leeway hardly reveals an intent to restrict the states....[10]
C.B., J.B. on Behalf of R.R.M. v. Commonwealth of Pennsylvania, Dept. of Public Welfare, 567 Pa. 141, 786 A.2d 176, 183 (2001). See Item 35, Ex. A, p. 5.
New York State's role in Title IV-E eligibility determinations comports with the overall concept of the federal statute, which affords states broad discretion to enact statutory and regulatory schemes to determine eligibility and implement the plan. 42 U.S.C. § 671. Each state's plan must meet certain requirements set forth in 42 U.S.C. § 671(a), after which the plan is approved by the Secretary of Health and Human Services. At that time, the state is eligible for payments under Title IV-E. As defendants have pointed out, "since the enactment of the Act, the State of New York has continually received federal Title IV-E reimbursement for its adoption subsidy program. Never during this period of time has the federal government refused to reimburse the State of New York on the basis that its Title IV-E State Plan failed to comply with SSA § 473." Item 28, ¶¶ 41, 64-69. Thus, the court concludes that the New York plan has the imprimatur of the federal government.
In order for a child to be eligible for federal adoption funds, the state is required, pursuant to 42 U.S.C. § 673(a)(2)(C), to determine that the child has "special needs." In that regard, the New York State legislature defined "child" for the purposes of the adoption assistance program, as a minor in the custody and guardianship of a local social services district, a non-public voluntary authorized agency or a foster parent. SSL § 451(1). Once the child fits the state statute's definition of child, then he or she can be considered a handicapped child or hard to place child under § 451(2) and (3). The Justices in C.B. and J.B. noted that Pennsylvania defined "children with special needs" as, among other things, being in agency custody, and this definition comported with the intent of the federal program to alleviate pressure on the state foster care system. They wrote that Pennsylvania's definition ensures that
federal subsidies will be available where the need is greatest i.e., to children who are the most difficult to place in adoptive homes. It was entirely reasonable for the [State legislature] to conclude that those children actually involved in the state foster care system, and who also have designated special needs, are the most difficult to place. It was equally as reasonable for the [State legislature] to conclude that private adoption agencies placing children are less likely to face a shortage of prospective parents ready, willing and financially able to adopt children, including special needs children. Nothing in the federal Act or *303 its legislative history suggests that it was intended to require states to provide assistance to facilitate adoptions in the latter situation....
C.B. and J.B., 786 A.2d at 183. The above observation is equally applicable in the case at bar, where the legislative purpose of the State's statute matches that of its federal counterpart, i.e., to reduce long-term foster care situations which have proven financially burdensome to the state and inimical to the children's best interests. SSL § 450.
Because the children adopted by plaintiffs in this case do not meet the definition of "child" per SSL § 451(1), they also do not meet the definition of "children with special needs" per 42 U.S.C. § 673(c), and the parents are not eligible for adoption subsidies. The state in this case has had no involvement in the adoptions, either via agencies, the social service department, or foster parents. The fact that the children may suffer from disabilities and may have been SSI eligible at the time of adoption is not enough, given that in order to be eligible for adoption subsidies, the child must be SSI eligible AND meet the definition of a child with special needs. Item 35, Ex. A, p. 5.
Plaintiffs argue that in order to be eligible for federal adoption assistance, a child need only be eligible for SSI and be a child with special needs. However, they appear to argue that a "child with special needs" is one with a serious disability, (which plaintiffs' children have). This definition does not comport with the definition set forth in the statute. However appealing such an argument may be, it is legally insufficient because the children must, but do not, satisfy the state's definition of "child."
The defendants' position that privately placed children do not qualify for Title IV-E benefits is supported by the policy announcements[11] and advisory letters that have been submitted as part of the record in this case. On June 3, 1999, Carol W. Williams, Associate Commissioner, Children's Bureau of the Department of Health and Human Services ("DHHS"), wrote to a Rita Laws, Ph.D., requesting clarification of several adoption subsidy issues. Item 1, Ex. B. Public Inquiry Number 6, as set forth in the letter, asked: "Can a title IV-E and SSI eligible child who is not in agency custody be eligible for adoption subsidy?" The response was:
There is no Federal statutory requirement that a child be in the placement and care of the child welfare agency in order to be eligible for adoption assistance subsidy. The eligibility requirements for the adoption assistance program are found in section 473(a)(2) of the Social Security Act.... When children who meet the definition of "special needs" at section 473(c) of the Act, whose goal is adoption and who have no involvement with the State, are determined to be AFDC or SSI eligible, the title IV-E agency may not exclude them from consideration or approval, if they are otherwise found eligible for adoption assistance in accordance with section 473.

Id.
Defendants agree that a child need not be in the legal custody of the Title IV-E state agency or its political subdivision, "only to the extent that adoption assistance may be available if the child is in the custody and guardianship of a voluntary agency," i.e., a private authorized agency. Item 28, ¶ 73.
*304 On January 23, 2001, the DHHS Administration on Children, Youth and Families issued a Policy Announcement, number ACYF-CB-PA-01-01, which addressed Title IV-E Adoption Assistance eligibility and ancillary policies. The Policy Announcement specified that one of the four ways that a child could be eligible for title IV-E adoption assistance was if it was eligible for SSI benefits and met the definition of a child with special needs. Item 35, Ex. A, p. 5. The letter noted:
A child is eligible for adoption assistance if, at the time the adoption petition is filed, the child meets the requirements for Title XVI SSI benefits, and prior to the finalization of the adoption is determined by the State to be a child with special needs. There are no additional criteria that a child must meet to be eligible for title IV-E adoption assistance when eligibility is based on a special needs child meeting SSI requirements. Specifically, how a child is removed from his or her home or whether the State has responsibility for the child's placement and care is irrelevant in this situation.
Id. The letter addressed additional issues, such as Special Needs Determinations requiring conformity with all three criteria defined in section 473(c) of the Act, id., p. 6; and the timing for the Adoption Assistance Agreements, id., p. 7.
While DHHS has stated that Title IV-E cannot be limited only to those children in publicly funded foster care, Item 28, Ex. D, New York's plan has no such limitation. In fact, New York's plan has a broader reach than the federal statute, as it provides adoption subsidies for children who are in the custody of a non-public voluntary authorized agency and in the direct custody of a foster parent. See Item 28, Ex. C. This is a proper exercise of state discretion, which takes into account the only limit imposed by DHHS in the Policy Announcement.
On July 6, 2001, Melvin Rosenblat, the Deputy Director, OCFS Division of Administration, wrote to the Regional Director of the HHS Administration for Children and Families, citing this case and raising seven questions concerning potential eligibility of a privately adopted child for federal adoption assistance pursuant to Title IV-E. The letter sought clarification of some statements made in the January 23, 2001 Policy Announcement. Attachment to Item 39.
HHS responded in a letter dated November 20, 2001. Item 44, Ex. 2. In answer to the question, "Under what circumstances could a privately adopted child satisfy the standards for a special needs child, as set forth in section 473(c) of the Social Security Act," the HHS official stated,
If the State determines that a child is otherwise eligible, it must then apply the standards developed by it to comply with the requirements of section 473(c) of the Social Security Act (the Act) to determine whether or not a privately adopted child satisfies the criteria for a special needs child. These are the same standards that the State would apply to a child under its responsibility.
Id., p. 1 (footnote omitted). The word "eligible" was footnoted to indicate that, in addition to meeting special needs criteria, the child had to also be, inter alia, SSI eligible at the time of the initiation of the adoption proceedings. Id., n. 1. Three additional questions clarified the section 473(c)(A)(1) and (2) requirements that the State had to determine that the child cannot or should not be returned to the home of his/her parents in a private adoption situation, and whether the State had discretion in determining what constitutes a specific factor or condition to conclude that the child cannot be placed with adoptive *305 parents without providing adoption assistance. Id., pp. 2, 3.
The next question asked whether a privately adopted child could be eligible for adoption assistance solely if he or she was SSI eligible "even if the State had not made any determination necessary to satisfy the definition of a special needs child." Id., p. 3. The answer was "No.... [A] child is eligible for adoption assistance if, at the time the adoption petition is filed, the child meets the requirements for title XVI SSI benefits and prior to the finalization of the adoption is determined by the State to be a child with special needs." Id. The answer to the next question stated that a child's SSI eligibility was the date included in the SSI notification, and confirmed that the State had to enter into a Title IV-E adoption assistance agreement with the family "no later than the finalization of the adoption." Id., p. 4.
In this case, as set forth supra, not only do the children adopted by plaintiffs not fit the definition of children with special needs per SSL § 451(1) and § 473(c), but none of the plaintiffs applied for the adoption subsidy prior to the completion of the adoption, required by SSL § 453(1)(d) and the November 20, 2001 letter from HHS.
Furthermore, there is a procedure in place for those persons who are denied an adoption subsidy. SSL § 455 provides that they are entitled to an administrative hearing before OCFS. Plaintiffs have claimed that they were told by various people that they would not be eligible because they adopted privately, but none of them ever requested a hearing before the OCFS. As a result, there is no final administrative determination that plaintiffs are not eligible for an adoption subsidy[12].
The plaintiffs cite a number of cases to buttress their position. However, Gruzinski v. Dep't of Public Welfare, 731 A.2d 246 (1999), allocatur denied, 561 Pa. 661, 747 A.2d 902 (1999), and Barczynski v. Dep't of Public Welfare, 727 A.2d 1222 (Pa.Cmwlth.1999), have been effectively overruled by the Supreme Court of Pennsylvania in the C.B. and J.B. case. Plaintiffs' rejection of the holding in C.B. and J.B. as not having the "intellectual force of the preceding authority" has no merit.
The court finds that the New York State law regarding its adoption subsidy program is not in conflict with, and is not preempted by, the federal Adoption Assistance and Child Welfare Act of 1980. Plaintiffs in this case who privately adopted their disabled children do not qualify for adoption assistance under the federal statute, and have no claim against the state for denying them benefits under the statute.[13] Therefore, plaintiffs have no basis for a 42 U.S.C. § 1983 cause of action since they are not able to establish a deprivation of the rights, privileges, and immunities of the members of the class secured by the Constitution and the laws of the United States. Based on the reasoning set forth above, plaintiffs have no claim for injunctive relief, retroactive payments, or reasonable attorney's fees. Accordingly, plaintiffs' cross-motion for summary judgment is denied, and their motion for class certification is therefore moot.

*306 CONCLUSION
The court grants the State defendants' motion for summary judgment, Item 24, dismissing this action. Plaintiffs' cross-motion for summary judgment and for class certification is denied. Item 35.
So ordered.
NOTES
[1] The Adoption Assistance Program is included in Title IV-E of the Social Security Act.
[2] Since June 2000, Barbara Glanowski has been an Adoption Specialist for Adopt America Network (AAN), a licensed Ohio adoption agency which places special needs children for adoption. Item 45, ¶¶ 7, 12 and Ex. 3, 4. AAN is not approved in New York to place out children for adoption and is not an authorized agency per § 371(10) of the Social Security Law ("SSL"). Id., ¶ 8. The State Office for Children and Family Services ("OFCS") indicated they had "serious legal concerns regarding the New York activities of AAN and its Adoption Specialists in regard to their placing out and fee activities in light of their absence of New York approval as an authorized agency." Id., ¶ 13.
[3] Pursuant to Chapter 436 of the Laws of 1997, the New York State Department of Social Services was abolished. The functions, powers, duties, and obligations of that Department concerning child welfare issues were transferred to the New York State Office of Children and Family Services. Item 28, p. 1, n. 1.
[4] Section 473(c) of the Social Security Act is codified as 42 U.S.C. § 673(c).
[5] "Handicapped" child is defined in SSL § 451(2) as a child who possesses "a specific physical, mental or emotional condition or disability of such severity or kind which, in accordance with regulations of the department, would constitute a significant obstacle to the child's adoption." The Office of Children and Family Services regulations, 18 NYCRR 421.24(a)(2), augment that definition:

(2) Handicapped child means a child who possesses a specific physical, mental or emotional condition or disability of such severity or kind which, in the opinion of the department (OCFS), would constitute a significant obstacle to the child's adoption. Such conditions include, but are not limited to:
(i) any medical or dental condition which will require repeated or frequent hospitalization, treatment or follow-up care;
(ii) any physical handicap, by reason of physical defect or deformity, whether congenital or acquired by accident, injury or disease, which makes or may be expected to make a child totally or partially incapacitated for education or for remunerative occupation, as described in sections 1002 and 4001 of the Education Law; or makes or may be expected to make a child handicapped, as described in section 2581 of the Public Health Law;
(iii) any substantial disfigurement, such as the loss or deformation of facial features, torso or extremities; or
(iv) a diagnosed personality or behavioral problem, psychiatric disorder, serious intellectual incapacity or brain damage which seriously affects the child's ability to relate to his peers and/or authority figures, including mental retardation or developmental disability.
[6] The other category of child who may receive an adoption subsidy is a qualified child who is "hard to place," defined in SSL § 451(3):

"Hard to place child" shall mean a child, other than a handicapped child, (a) who has not been placed for adoption within six months from the date his guardianship and custody were committed to the social services official or a voluntary authorized agency, or (b) who has not been placed for adoption within six months from the date a previous adoption placement terminated and the child was returned to the care of the social services official or a voluntary agency, or (c) who possesses or presents any personal or familial attribute, condition, problem or characteristic which, in accordance with regulations of the department (OCFS), would be an obstacle to the child's adoption, notwithstanding the child has been in the guardianship and custody of the social services official or a voluntary authorized agency for less than six months.
The OCFS regulations, 18 NYCRR 421.24(a)(3), provide greater details concerning a "hard to place" child:
(3) Hard-to-place child means a child, other than a handicapped child:
(i) who has not been placed for adoption within six months from the date his or her guardianship and custody were committed to the social services official or the voluntary authorized agency; or
(ii) who has not been placed for adoption within six months from the date a previous adoption placement terminated and the child was returned to the care of the social services official or the voluntary authorized agency; or
(iii) who meets any of the conditions listed in clauses (a) through (f) of this subparagraph, which the department (OCFS) has identified as constituting a significant obstacle to a child's adoption, notwithstanding that the child has been in the guardianship and custody of the social services official or the voluntary authorized agency for less than six months:
(a) the child is one of a group of two siblings (including half-siblings) who are free for adoption and it is considered necessary that the group be placed together ... and
(1) at least one of the children is five years old or older; or
(2) at least one of the children is a member of a minority group which is substantially over-represented in New York State foster care in relation to the percentage of that group to the State's total population; or
(3) at least one of the children is otherwise eligible for subsidy in accordance with the provisions of this subdivision;
(b) the child is the sibling or half-sibling of a child already adopted and it is considered necessary that such children be placed together ...; and
(1) the child to be adopted is five years old or older; or
(2) the child is a member of a minority group with is substantially over-represented in New York State foster care in relation to the percentage of that group to the State's total population; or
(3) the sibling or half-sibling already adopted is eligible for subsidy or would have been eligible for subsidy if application had been made at the time of or prior to the adoption;
(c) the child is one of a group of three or more siblings (including half-siblings) who are free for adoption and it is considered necessary that the group be placed together...; or
(d) the child is eight years old or older and is a member of a minority group which is substantially overrepresented in New York State foster care in relation to the percentage of that group to the State's total population; or
(e) the child is 10 years old or older; or
(f) the child is hard to place with parent(s) other than his/her present foster parent(s) because he/she has been in care with the same foster parent(s) for 18 months or more prior to the signing of the adoption placement agreement by such foster parent(s) and has developed a strong attachment to his/her foster parent(s) while in such care and separation from the foster parent(s) would adversely affect the child's development.
[7] During oral argument, counsel for the defendants asserted that the State must determine that the child cannot be returned home to its biological parents, and make a search to try to find parents willing to take the child without a subsidy, pursuant to 42 U.S.C. § 673(c), before adoption, or the presumption is that the child can be adopted without benefits.
[8] The Adoption Assistance Program is included in the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670-76, Title IV-E of the Social Security Act. The purpose of the Act was summarized in the U.S.Code Congressional and Administrative News (USCCAN) in 1980:

The committee amendment involves a major restructuring of Social Security Act programs for the care of children who must be removed from their own homes. In particular, the incentive structure of present law is modified to lessen the emphasis on foster care placement and to encourage greater efforts to find permanent homes for children either by making it possible for them to return to their own families or by placing them in adoptive homes.... Under the adoption subsidy program, a State would be responsible for determining which children in the State in foster care would be eligible for adoption assistance because of special needs which have discouraged their adoption....
1980 USCCAN, Vol. 3, pp. 1450-51. This reasoning is echoed in the Act's Congressional declaration of purpose, found at 42 U.S.C. § 670, where Congress passed appropriations so as to "enabl[e] each State to provide, in appropriate cases, foster care and transitional independent living programs for children who otherwise would have been eligible for assistance under the State's plan ... and adoption assistance for children with special needs...." DHHS then promulgated 45 CFR § 1356.40 to implement the federal adoption assistance program. The DHHS noted that "The substantial costs of providing proper care for children with special needs has been a significant hindrance to the adoption of thousands of AFDC-foster care children." Item 28, ¶ 44.
[9] The state agency considered the adoption at issue "to be the equivalent of a private adoption," notwithstanding that the child was initially placed in the care of the Philadelphia Department of Human Services. C.B. and J.B. on Behalf of R.R.M. v. Commonwealth of Pennsylvania, 567 Pa. 141, 786 A.2d 176, 179 (2001). This latter fact satisfied the state's agency custody requirements, entitling the child's legal custodians to an adoption assistance subsidy.
[10] Pennsylvania's statute, Title 62 § 772, is similar to New York's in that it "defines an eligible child for adoption subsidy purposes as a child: in the legal custody of local authorities; in foster care for at least six months; and has been shown to be difficult to place due to some physical or mental handicap or other condition. A child in the legal custody of an agency approved by the State department must be certified as eligible by the local authorities." Item 26, ¶ 27.
[11] DHHS provides instructions and clarifications to the States concerning the federal adoption assistance program through policy announcements. Item 28, ¶ 45.
[12] During oral argument, plaintiffs' counsel stated that families who adopt privately are not aware of the federal program, and therefore do not apply. This prevents them from having their application evaluated in an administrative hearing. According to counsel, the Erie County Surrogate was also not aware of this program until recently. The court encourages the defendants in this case to formally notify the Surrogates in the State of New York of the existence of the Federal Adoption Assistance Program.
[13] Based upon this reasoning which dismisses the action, the court need not reach the issue of whether plaintiffs have a private right of action under Title IV-E.