ADOPTION ARC, INC., Petitioner,

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1998.

Decided April 7, 1999.

Tara E. Gutterman, Philadelphia, for petitioner.

Charlotte A. Nichols, Philadelphia, for intervenor, Philadelphia County, Dept. of Health and Human Services.

Before DOYLE, J., FLAHERTY, J., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Adoption Resource Center, Inc. (ARC), on behalf of two minor children, appeals from an order of the Department of Public Welfare (DPW) that had accepted a Hearing Examiner's recommendation to affirm the decision of the Philadelphia County Department of Health and Human Services (County Agency) denying the children's request for adoption assistance.

The Federal Adoption Assistance and Child Welfare Act of 1980 (Federal Act),[1] an amendment to Title IV–E of the Social Security Act, provides for adoption assistance for "special needs" children.[2] In accordance with the Federal Act, each state is required to enact its own program to administer adoption assistance.[3] The purpose of the applicable state law, the Pennsylvania Adoption Opportunities Act[4] (State Act), is to promote placement of children who are physically and/or mentally handicapped, emotionally disturbed or difficult to place by virtue of their age, sibling relationship or ethnicity.[5] Under the State Act, adopting families may apply for financial assistance on behalf of children with such special needs, provided that the children meet the following eligibility standards contained in DPW regulations (state regulations):

### Child Eligibility

(a) The county children and youth social service agency (county agency) is the sole authority for certifying a child's eligibility for adoption assistance.

(b) The county agency shall certify for adoption assistance children whose placement goal is adoption and who meet the following requirements:

(1) The child is 17 years of age or younger.

(2) Parental rights have been terminated under 23 Pa.C.S. Part III (relating to the Adoption Act).

(3) The child is in the legal custody of the county agency or another agency approved by the Department.

(4) The child shall have at least one of the following characteristics:

(i) A physical, mental or emotional condition or handicap.

(ii) A genetic condition which indicates a high risk of developing a disease or handicap.

(iii) Be a member of a minority group.

(iv) Be a member of a sibling group.

(v) Be 5 years of age or older.

(c) **Prior to certification for adoption assistance, the county agency shall make reasonable efforts to find an adoptive home without providing adoption assistance. Evidence of this effort shall be recorded in the case record and include registration with the Department's adoption exchange for at least 3 months.**

(d) **If it would be against the best interests of the child** because of factors, such as the existence of significant emotional ties with prospective adoptive parents while in the care of the parents as a foster child, **the requirement of subsection (c) does not apply.**

55 Pa.Code § 3140.202 (emphasis added).[6]

With these regulations in mind, we turn to the facts of this case. The first child, M.H., was born on July 29, 1995, and placed for adoption by the birth parents with ARC, a private, nonprofit, Pennsylvania-licensed adoption agency. M.H., a member of a minority group, has been diagnosed with sickle cell disorder. The present adoptive parents took custody of M.H. on August 14, 1995, and the parental rights of M.H.'s birth parents

---

1. 42 U.S.C. §§ 670–676.

2. 42 U.S.C. § 671.

3. 42 U.S.C. § 673.

4. The Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, added by Section 1 of the Act of Dec. 30, 1974, P.L. 1039, 62 P.S. §§ 771–774.

5. 62 P.S. § 771.

6. The state regulations further provide that the county agency shall execute a binding written adoption assistance agreement between the agency and the prospective adopting parents at the time of or before the court issues the final adoption decree. 55 Pa.Code § 3140.203(a). If, however, a request for adoption assistance is denied and such an agreement is not signed and in effect at the time of or prior to the finalization of the adoption (*i.e.*, the facts in this case), the adopting parents may request a fair hearing under section 671(a)(12) of the Federal Act, 42 U.S.C. § 671(a)(12), provided there are extenuating circumstances. An example of an "extenuating circumstance" is an erroneous determination by the State agency that a child is ineligible for adoption assistance. (*See* DHHS *Policy Statement*, ACF–PIQ–92–02, 6/25/92 at 3; Reproduced Record (R.R.) at Exhibit M.)

were terminated on December 6, 1995. On May 10, 1996, ARC applied for adoption assistance on behalf of M.H.'s adoptive parents, which was denied by letter from the County Agency. The letter did not provide the basis for the denial.

The second child, J.M., was born in early 1996 and abandoned under a van in Center City, Philadelphia, on February 17, 1996. The medical history of J.M., also a member of a minority group, is unavailable as the identities of the birth parents are unknown. After the County Agency and ARC each filed for custody of the child, the Court of Common Pleas of Philadelphia County transferred custody of J.M. to ARC on March 1, 1996. ARC subsequently transferred custody to the present adoptive parents, and parental rights of the unknown birth parents were terminated on June 12, 1996. The County Agency had previously located adoptive parents willing to adopt J.M. without an adoption subsidy, but legal custody was transferred to ARC before the adoption process could be completed. On July 9, 1996, ARC applied for adoption assistance on behalf of J.M.'s adoptive parents, which was denied by letter from the County Agency. The letter did not set forth the grounds for the denial.

ARC subsequently filed appeals with DPW on behalf of both M.H. and J.M.[7] After conducting a hearing on July 25, 1997, a Hearing Examiner issued a recommendation to deny both appeals. The Hearing Examiner determined that the children essentially qualify for assistance in every respect under the state regulations, except that ARC did not prove that "reasonable efforts" were made first to locate adopting parents who would not require adoption assistance, as required by subsection (c) in the state regulations. The Hearing Examiner also concluded that the exception to the "reasonable efforts" requirement, contained in subsection (d), did not apply to the children in this case. On December 11, 1997, DPW issued an order accepting the Hearing Examiner's recommendation, thereby denying the appeals. ARC then filed an appeal with this Court.

On appeal, ARC argues that: (1) the County Agency and DPW's application of the "reasonable efforts" requirement in the state regulations violates federal law; and (2) the Hearing Examiner's order denying assistance under the "reasonable efforts" test, and the foster care exception thereto, was not supported by substantial evidence.

In response, the County Agency, as Intervenor, argues that DPW was correct in denying the applications of the children because the County Agency was unable to complete a "reasonable efforts" search and therefore unable to comply with the requirements of subsection (c) under the state regulations. The County Agency maintains that, according to the regulations, the **only** entity permitted to meet the "reasonable efforts" requirement is the **county agency** and not a private, nonprofit agency like ARC. The County Agency claims it did not have the opportunity to conduct a "reasonable efforts" search on behalf of M.H. because M.H. was never in the county system. In the case of J.M., the County Agency claims that it succeeded in locating an adoptive family that did not require assistance, but that its efforts were cut short by an order of Common Pleas that awarded custody of J.M. to ARC.

 This Court's standard of review of a decision by DPW is limited to a determination of whether DPW's adjudication is supported by substantial evidence, is in accordance with law or whether constitutional rights were violated. *Nolan v. Department of Public Welfare*, 673 A.2d 414 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 546 Pa. 650, 683 A.2d 887 (1996). Because we believe that the decisions of the County Agency and DPW are not supported by substantial evidence, we reverse DPW's decision to deny adoption assistance eligibility to M.H. and J.M.

The first issue we must address is whether the County Agency's and/or DPW's application of the state regulations violates the fed-

---

7. ARC's appeal to DPW included the denial of assistance to a third child, N.T. DPW's order reversed the County Agency's decision and certified N.T. as eligible for adoption assistance, and, therefore, DPW's decision with respect to N.T. is not the subject of this appeal.

eral scheme of child welfare and adoption assistance. Specifically, ARC argues that the County Agency's interpretation of the "reasonable efforts" requirement contained in 55 Pa.Code § 3140.202(c) is in violation of 42 U.S.C. § 673(c)(2)(B).[8] Under the Supremacy Clause of the United States Constitution,[9] a valid act of Congress supersedes any conflicting state or local law. The United States Supreme Court has recognized implied conflict preemption where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

■ According to the state regulations at issue in this case, the "reasonable efforts" requirement under subsection (c) is met by registering the child with the Pennsylvania Adoption Exchange (PAE) for at least three months, during which time a search is conducted by the agency for adopting parents who would not require assistance. ARC argues that the County Agency's application of the "reasonable efforts" test equates to a "means test" for determining eligibility for adoption assistance, something that is specifically prohibited by the Federal Act.[10] ARC further asserts that a three-month waiting/search period is in conflict with the purpose and intent of the Federal Act. In support of its argument, ARC cites to a series of Policy Interpretation Questions (PIQs) issued by the U.S. Department of Health and Human Services (DHHS) to answer questions regarding the application of Title IV–E and the Federal Act. According to a PIQ issued in 1992, the intent of Congress, with respect to 42 U.S.C. § 673(c)(2)(B) is as follows:

> It was the intent of Congress, with the establishment of the adoption assistance program, to increase significantly the number of children placed in permanent homes. Thus, it is reasonable to conclude that **it was not the intent of Congress that a child remain unnecessarily in foster care while the agency "shops" for a family which might be less suitable but is willing to adopt the child without a subsidy, if it has already found a suitable placement for the child.**

(DHHS Policy Statement, ACF–PIQ–92–02, 6/25/92, at 3; R.R. at Exhibit M.) (Emphasis added.) Although we agree that the primary focus of the agency should be on finding the most suitable family for the child, and not on "shopping" for a family that does not require assistance, we decline to hold that the three-month registration requirement contained in the state regulations is *per se* unreasonable or in violation of federal law. Moreover, the state regulations provide an exception that permits the agency to waive the "reasonable

---

**8.** The pertinent part of the Federal Act provides as follows:

> (c) Children with special needs
> For purposes of this section, a child shall not be considered a child with special needs unless—
> (1) the State has determined that the child cannot or should not be returned to the home of his parents; and
> (2) the State has first determined (A) that there exists with respect to the child a specific factor or condition (such as his ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental, or emotional handicaps) because of which it is reasonable to conclude that such child cannot be placed with adoptive parents without providing adoption assistance under this section or medical assistance under subchapter XIX of this chapter, and (B) that, except where it would be against the best interests of the child because of such factors as the existence of significant emotional ties with prospective adoptive parents while in the care of such parents as a foster child, a reasonable, but unsuccessful, effort has been made to place the child with appropriate adoptive parents without providing adoption assistance under this section or medical assistance under subchapter XIX of this chapter.

42 U.S.C. § 673(c). (emphasis added).

**9.** U.S. Const., art. VI, § 2.

**10.** 45 C.F.R. § 1356.40(c) provides, "[t]here must be no income eligibility requirement (means test) for the prospective adoptive parent(s) in determining eligibility for adoption assistance payments." Furthermore, sections from the Federal Act "clearly indicate that eligibility for adoption assistance is related to the child and not the parent; therefore, the negotiation should focus on the needs of the child." DHHS Policy Statement, ACYF–PIQ–90–02, 10/2/90, at 5; R.R. at Exhibit W.

efforts" search requirement when it would be in the best interests of the child. Accordingly, we turn now to address the issue of whether that exception applies in this case.

 The exception provides that the "reasonable efforts" requirement of subsection (c) does not apply if it would be against the best interests of the child "because of factors, such as the existence of significant emotional ties with prospective adoptive parents while in the care of the parents as a foster child." 55 Pa.Code § 3140.202(d). The County Agency argued that the exception is limited to the one scenario described therein, i.e., a foster care situation, and that the exception does not apply to the facts of this case. In response, the Hearing Examiner rejected the County Agency's argument that the regulations permit only one exception to the "reasonable efforts" requirement. We agree and note that the "such as" language of the regulation suggests that other situations may come within the exception, and the foster care scenario described therein merely provides one example. **However,** despite concluding that the exception in the regulation should be interpreted broadly, the Hearing Examiner determined that the exception did not apply to the children in this case. After a careful review of the record, we believe that the Hearing Examiner's determination was not supported by substantial evidence.

When placing a child with an adoptive family, the focus of the agency should be on finding the most suitable family, taking into consideration the best interests of the child. Both the Federal and the State Acts plainly state that the "reasonable efforts" test is not required when the child has formed emotional ties with the prospective adoptive parents. 42 U.S.C. § 673(c)(2)(B). In this case, each child was placed in the custody of the adoptive parents at a very tender age and formed familial bonds with their adoptive parents. It would not have been in the best interest of either child to have the child removed and placed with a different family solely because that family did not require an adoption subsidy. In light of the above facts, we believe that extenuating circumstances existed in

this case to justify a waiver of the three-month "reasonable efforts" requirement.

 Furthermore, even if we agreed with the Hearing Examiner's determination that the exception did not apply to the children in this case, we would still be forced to reverse his decision according to another DHHS policy interpretation statement, which provides as follows:

In an effort to find an adoptive home for a child, the agency should first look at a number of families in order to locate the most suitable family for the child. Once the agency has determined that placement with a certain family would be the most suitable for the child, then full disclosure should be made of the child's background, as well as known and potential problems. If the child meets the State's definition of special needs with regard to specific factors or conditions, then the agency can pose the question of whether the prospective adoptive parents are willing to adopt without a subsidy. **If they say that they cannot adopt the child without a subsidy, the agency would meet the requirement in [Section 673(c)(2)(B)] that there be a reasonable, but unsuccessful, effort to place the child without providing adoption assistance.**

(DHHS Policy Statement, ACF–PIQ–92–02, 6/25/92, at 3; R.R. at Exhibit M.) (Emphasis added.) In other words, all that is required under the regulations is that a "reasonable effort" be made to place the child without adoption assistance. **However,** "reasonable" does not necessarily mean successful. In the case of M.H., the child clearly meets the definition of special needs, and ARC conducted a search to place M.H. with the most suitable family, taking into consideration the child's special medical condition. ARC found the most suitable family for M.H., but the family wished to apply for the adoption subsidy. Therefore, ARC made a reasonable, albeit unsuccessful, attempt at placing M.H. without providing adoption assistance. With regard to J.M., the County Agency has conceded that it conducted a "reasonable efforts" search and located a family willing to adopt J.M. without a subsidy. However, Common Pleas determined that the more

suitable environment for J.M. would be with another family and, therefore, transferred custody to ARC before the County Agency could complete adoption proceedings. Consequently, the "reasonable efforts" requirement also was met in the case of J.M. Thus, all of the requirements in the regulations were met with regard to both M.H. and J.M., and we see no reason why either child should be denied eligibility for adoption assistance.

 Finally, we disagree with the County Agency's contention that J.M. and M.H. were correctly denied eligibility for adoption assistance because the Agency **itself** never had the opportunity to conduct a "reasonable efforts" search. Although the county agency has the responsibility to determine whether to certify a child as eligible for assistance, the regulations do not require the child to be in the custody of the county agency before it may do so.[11] According to the plain language of the regulations, a child may be in the custody of **either** the county agency **or** another agency. Furthermore, DHHS has recognized that a child placed in the care of a private agency may be eligible for Title IV–E adoption assistance, as long as the child is determined by the State to be a child with special needs in accordance with the Federal Act[12] and otherwise meets the eligibility requirements.[13] According to PIQ 87–05:

> there will be ... situations in which children with special needs are in care under the responsibility of private, non-profit agencies without the involvement of the State [A]gency.... [T]he title IV–E agency may not exclude them from consideration or approval, if they are otherwise found to be eligible for adoption assistance.

Therefore, we conclude that a child placed with an adopting family through a private, non-profit organization such as ARC may be eligible for adoption assistance, provided that

he or she meets all other requirements set forth in the regulations.

Although we do not find the state regulations to be in conflict with federal law, the conclusion reached by both the County Agency and by DPW was not supported by substantial evidence. Thus, we hold that J.M. and M.H. should be deemed eligible to obtain adoption assistance. Accordingly, the decision of DPW is reversed.

## ORDER

NOW, April 7, 1999, the order of the Department of Public Welfare with respect to J.M. and M.H. in the above-captioned matter is hereby reversed.

---

11. The applicable regulation provides in pertinent part:

 (a) The county children and youth social service agency (county agency) is the sole authority for certifying a child's eligibility for adoption assistance.

 (b) The county agency **shall** certify for adoption assistance children whose placement goal is adoption and who meet the following requirements:

 . . . .

 > (3) The child is in the legal custody of the county agency **or another agency** approved by the Department.

 55 Pa.Code § 3140.202 (emphasis added).

12. 42 U.S.C. § 673(c).

13. DHHS Policy Statement, ACYF–PIQ–85–4, 4/16/85, at 2; R.R. at Exhibit I.