23 A.3d 1015

**Gary and Lori LAIRD**

v.

**DEPARTMENT OF PUBLIC WELFARE.**

**Appeal of City of Philadelphia Department of Human Services.**

**Legrand Johnson And Shelli Johnson (In re J.J.J.)**

v.

**Department of Public Welfare.**

**Appeal of City of Philadelphia Department of Human Services.**

**Gary and Lori Laird, Appellees**

v.

**Department of Public Welfare, Appellant.**

**Legrand Johnson and Shelli Johnson (In re J.J.J.), Appellees**

v.

**Department of Public Welfare, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided June 20, 2011.

140

Craig R. Gottlieb, City of Philadelphia Law Department, for appellant.

Howard Ulan, PA Department of Public Welfare, Harrisburg, Tara Esther Gutterman, Law Offices of Tara E. Gutterman, Suzanne R. Fisher, James G. Colins, Cozen O'Connor, Philadelphia, Deborah E. Spivack, for appellees.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

In this appeal by allowance, we are called to decide whether adopted children, whose adoptions were procured through a Pennsylvania-licensed, private adoption agency in the 1990s, are eligible to receive adoption assistance subsidies retroactive to the dates of the children's adoptions and prospectively through their eighteenth birthdays, despite not applying for

those subsidies until 2007. For the reasons that follow, we hold that the children are not eligible for any adoption subsidies, either retroactively or prospectively, and thus reverse the Commonwealth Court.

## I.  Facts and Procedural History

The facts underlying the instant appeals are not disputed. J.J.J. is an African–American male,[1] who was born in Philadelphia on June 6, 1995. Shortly thereafter, J.J.J.'s birth mother voluntarily relinquished her parental rights, and he was placed with the Adoption Resource Center, Inc. (ARC), a private, but Pennsylvania-licensed adoption agency based in Philadelphia. On June 14, 1995, J.J.J. was placed with Legrand and Shelli Johnson (the Johnsons), a married couple living in New Mexico. Adoption of J.J.J. was then finalized in New Mexico on December 5, 1995.

Alyssa and Addison are African–American females, who were born in Philadelphia on March 5, 1998, and November 30, 1998, respectively. Similar to J.J.J., their birth mothers voluntarily relinquished their parental rights to the girls shortly after giving birth, and placed the girls with ARC for adoption.[2] ARC subsequently placed the children with Gary and Lori Laird (the Lairds), a married couple living in Utah, on March 14 and December 4, 1998, respectively. Their adoptions of the children were finalized on October 19, 1998 (Alyssa) and July 19, 1999 (Addison) in Utah.[3]

1.  As will be explained further, the race of the children involved in this appeal is germane to the questions presented herein.

2.  From what we can glean from the record, Alyssa and Addison are not related to one another, nor are either of the girls related to J.J.J. Further, while it is undisputed that the children were placed for adoption with ARC, it is unapparent from the record why the children were placed with ARC rather than the Philadelphia Department of Human Services. What is clear, however, is that neither the County of Philadelphia, nor the Commonwealth, knew the children existed at the time of adoption.

3.  The Johnsons and the Lairds have filed a joint brief before this Court and, thus, where appropriate, will be referred to collectively as "Appellees."

At the time of the respective adoptions, legal counsel for ARC, Tara E. Gutterman, Esquire,[4] informed Appellees that their newly adopted children were ineligible for adoption subsidies that might normally be permitted under the Pennsylvania Adoption Opportunities Act (AOA), 62 P.S. §§ 771–774, despite their satisfaction of requirements established in 55 Pa.Code § 3140.202, because the adoptions were procured through a private agency.[5] In April 1999, however, Attorney Gutterman successfully argued to the Commonwealth Court, in a separate case, that children adopted through Pennsylvania-licensed private adoption agencies were eligible for adoption assistance subsidies pursuant to the AOA. *Adoption ARC, Inc. v. Dep't of Pub. Welfare*, 727 A.2d 1209 (Pa.Cmwlth. 1999).[6] Not until 2007, however, did Appellees file separate requests for retroactive and prospective adoption assistance with the Philadelphia Department of Human Services (DHS) based, in part, on the *Adoption ARC* decision. Despite ARC's status as a Pennsylvania-licensed adoption agency, the parties do not dispute that neither the Pennsylvania Department of Public Welfare (DPW) nor DHS knew that the children existed until Appellees filed their respective applications for adoption assistance in 2007.

**4.** Attorney Gutterman is counsel of record for Appellees in the instant matter.

**5.** Pursuant to the AOA and administrative regulations promulgated pursuant thereto, adopted children with certain enumerated "special needs," as defined by 55 Pa.Code § 3140.202(b)(4), are generally eligible to receive an adoption assistance subsidy. The children at issue here all are "special needs" children in accord with the Pennsylvania Code in that they are "member[s] of a minority group." 55 Pa.Code § 3140.202(b)(4)(iii). Other considerations include having physical, mental, or emotional handicaps, being born with high-risk genetic conditions, being members of a sibling group, or being older than five-years old. *Id.* § 3140.202(b)(4)(i)-(ii), (iv)-(v).

For ease of discussion, we further note that, notwithstanding that the AOA contains provisions defining special needs children, the specific criteria focused on by the parties and the courts below emanates from Title 55 of the Pennsylvania Administrative Code. Accordingly, we will refer to such regulatory provisions, except where our discussion specifically calls for an examination of the statutory language of the AOA. *See e.g. infra* note 7.

**6.** The *Adoption ARC* decision will be explained in greater detail, *infra.*

DHS denied Appellees' petitions seemingly because of ARC's status as a private adoption agency, despite the *Adoption ARC* decision to the contrary. Appellees each filed individual appeals to the DPW Bureau of Hearings and Appeals. After full administrative hearings before separate ALJs, the Bureau sustained Appellees' appeals and granted the adoption assistance subsidies, based largely upon the *Adoption ARC* decision. To that end, the ALJs each determined that the children, as African–Americans, were qualified under 55 Pa.Code § 3140.202(b)(4)(iii), and thus were eligible to receive subsidies. Specifically, the subsidies included nonrecurring adoption costs, Medical Assistance coverage from the respective dates of adoption until the children turn eighteen, and monthly cash benefits retroactively from the dates of the children's adoptions and prospectively until the children reach the age of eighteen.

DHS appealed these orders to the Secretary of Public Welfare (the Secretary). Upon learning of DHS's appeal, DPW's Office of General Counsel sought leave to intervene, which the Secretary granted. On June 5, 2008, in two separate orders, the Secretary reversed the decisions of the ALJs and denied the adoption assistance subsides, on the grounds that the existence of the children was unknown to DHS at the time of the adoptions, and that county agencies "do not have the responsibility to seek out and inform individuals" of the availability of subsidies for children adopted through private agencies. *See* Order of Secretary of DPW, Jun. 5, 2008.

Appellees filed timely appeals to the Commonwealth Court, and subsequently moved for consolidation of the two cases. On October 6, 2008, the court granted the consolidation motions, while simultaneously staying disposition of thirty-three parallel cases, pending the outcome of this appeal. DPW filed a brief as the principal appellee, and DHS sought, and the Commonwealth Court granted, leave for it to intervene, resulting in it becoming a party to this appeal. On May 1, 2009, a panel of the court reversed the orders of the Secretary, and reinstated the orders of the ALJs. *Laird v. DPW*, 972 A.2d 596 (Pa.Cmwlth.2009).

In so doing, the panel first examined the AOA, regulations promulgated by DPW in furtherance of the AOA, and recent case law from the Commonwealth Court applying the AOA. The court noted that the General Assembly enacted the AOA in 1974 "to encourage and promote the placement in adoptive homes of children who are physically and/or mentally handicapped, emotionally disturbed, or hard to place by virtue of age, sibling relationship, or ethnicity." 62 P.S. § 771. To further this goal, the General Assembly charged DPW with promulgating regulations to identify at risk children, find them proper adoptive homes, and implement adoption assistance subsidies in furtherance of these goals. Moreover, DPW was to adopt regulations to govern the actions of local and county authorities *vis-à-vis* adoption subsidies. 62 P.S. § 773(a), (b). In full, these regulations, specifically 55 Pa. Code § 3140.202, provide:

(a) The county children and youth social service agency (county agency) is the sole authority for certifying a child's eligibility for adoption assistance.

(b) The county agency shall certify for adoption assistance children whose placement goal is adoption and who meet the following requirements:

(1) The child is 17 years of age or younger.

(2) Parental rights have been terminated under 23 Pa. C.S. Part III (relating to the Adoption Act).

(3) The child is in the legal custody of the county agency or another agency approved by the Department.

(4) The child shall have at least one of the following characteristics:

(i) A physical, mental or emotional condition or handicap.

(ii) A genetic condition which indicates a high risk of developing a disease or handicap.

(iii) Be a member of a minority group.

(iv) Be a member of a sibling group.

(v) Be 5 years of age or older.

(c) Prior to certification for adoption assistance, the county agency shall make reasonable efforts to find an adoptive home without providing adoption assistance. Evidence of this effort shall be recorded in the case record and include registration with the Department's adoption exchange for at least 3 months.

(d) If it would be against the best interests of the child because of factors, such as the existence of significant emotional ties with prospective adoptive parents while in the care of the parents as a foster child, the requirement of subsection (c) does not apply.[7]

The county agency is further charged with executing a binding, written agreement for adoption assistance between itself and prospective adoptive parents "at the time of or before the court issues the final adoption decree." 55 Pa.Code § 3140.203(a). Upon the reaching of such an agreement, the county agency is generally responsible for the complete payment of all adoption assistance, with reimbursement from the Commonwealth up to 80 percent. 55 Pa.Code § 3140.206. The county may further be eligible for reimbursement from the federal government under the federal Child Welfare Act,[8] should the child also meet federal criteria, which differs

7. While not discussed by the Commonwealth Court panel, it is important to note that Section 772 of the AOA also defines an "eligible child" as one who is

in the legal custody of local authorities where parental rights have been terminated pursuant to the procedure set forth in Article III of the act of July 24, 1970 (P.L. 620, No. 208), known as the "Adoption Act," and such child has been in foster placement for a period of not less than six months and where the child has been shown to be a difficult adoption placement because of a physical and/or mental handicap, emotional disturbance, or by virtue of age, sibling relationship, or ethnicity. A child in the legal custody of an agency approved by the department shall be an eligible child if the child is certified as eligible by the local authorities.

62 P.S. § 772. The regulation found at Section 3140.202 refines this definition with the additional criteria found in subsection (b).

8. 42 U.S.C. §§ 670, et seq. Under the Child Welfare Act, state and county agencies, known as "title IV–E agencies," may only receive federal reimbursements if the state's adoption assistance program conforms with federal law and regulations. 42 U.S.C. § 671(a).

slightly from the criteria enumerated in Section 3140.202. *Id.;* 55 Pa.Code § 3140.205.

With this statutory and regulatory law set forth, the panel then went on to examine its recent caselaw concerning the AOA and relevant regulations. Prior to 1999, it was the understanding of the various county and state agencies involved in adoption subsidies that only children in the custody of a county agency were eligible for such subsidies. This changed in 1999 with the aforementioned *Adoption ARC* decision. At issue in *Adoption ARC* was whether a county agency was still responsible for making "reasonable efforts to find an adoptive home without providing adoption assistance," 55 Pa.Code § 3140.202(c), for children who were being placed through a private adoption agency. Philadelphia DHS, the county agency involved in the *Adoption ARC* case, as well as DPW, argued that it did not have the responsibility to expend such "reasonable efforts" because the child subject to the appeal was not in custody of DHS at the time of adoption, and, thus was ineligible for subsidies.

The Commonwealth Court rejected this argument, finding that under the plain language of 55 Pa.Code § 3140.202, a child otherwise eligible for adoption subsidies must be certified by a county agency for the subsidies regardless of whether the child is in county or private custody. *See* 55 Pa.Code § 3140.202(b)(3) ("The county agency shall certify for adoption assistance children whose placement goal is adoption and who meet the following requirements: (3) The child is in the legal custody of the county agency or another agency approved by the Department.").

The *Adoption ARC* Court buttressed its conclusion by citing to a since revoked Federal Policy Interpretation Question, which stated that, under the federal Child Welfare Act, children may not be denied adoption assistance based upon being the responsibility of a private adoption agency. Dep't of Health & Human Servs. (DHHS) Policy Statement, ACYF–PIQ–87–05, *revoked by* DHHS Policy Statement, ACYF–CB–PA–01–01 (January 23, 2001). Thus, the *Adoption ARC* Court concluded, "a child placed with an adopting family through a

private, non-profit organization such as [Adoption] ARC may be eligible for adoption assistance, provided that he or she meets all other requirements set forth in the regulations." *Adoption ARC*, 727 A.2d at 1215.

Three months after the *Adoption ARC* decision, the Commonwealth Court again considered adoption subsidies in *Gruzinski v. DPW*, 731 A.2d 246 (Pa.Cmwlth.1999) (*en banc*). In that case, a child with multiple physical maladies was born to a mentally disabled mother in Beaver County. The Beaver County Court of Common Pleas placed the child into temporary foster care under the supervision of the county children and youth services (CYS). Eventually, relatives of the child who resided in Connecticut adopted her. At the time of the adoption, despite the child's undisputed special needs, as specified by 55 Pa.Code § 3140.202(b)(4), Beaver County CYS did not inform the relatives of the child's eligibility for adoption assistance.

Soon thereafter, the Connecticut relatives divorced, again leaving the welfare of the child in limbo. Two new relatives, the Gruzinskis, then stepped forward to adopt the child. Six years after the adoption, the Gruzinskis learned, through third-party sources, that their adopted daughter could be eligible for adoption assistance, and applied to Beaver County CYS for such aid. After CYS denied adoption assistance, appeals progressed through the normal course, and, eventually, an *en banc* panel of the Commonwealth Court held that the child was eligible for subsidies.

In so doing, the court first relied upon the then-valid, but since-revoked, DHHS policy statement PIQ–87–05, which, as noted previously, stated that county and state agencies could not deny adoption assistance solely because a private adoption agency arranged and facilitated the child's adoption.[9] Indeed, the *Gruzinski* Court definitively held, "In Pennsylvania, the county agency is responsible for determining the Adoption Assistance eligibility not only for children who are in their

9. In *Gruzinski*, the private adoption occurred between the divorced Connecticut relatives and the Gruzinskis.

care and custody, but for *all children.*" *Gruzinski,* 731 A.2d at 254 (emphasis in original).

The *Gruzinski* Court then confronted that the litigation was occurring six years after finalization of the second adoption. The court recognized that, under both the Pennsylvania AOA and federal Child Welfare Act, generally, any adoption assistance agreement must be completed before or at the time of consummation of the adoption. *See* 55 Pa.Code § 3140.203(a); 45 C.F.R. § 1356.40(b)(1). The court then noted, however, that federal policy had waived compliance with federal regulation 1356.40(b)(1) when "extenuating circumstances" existed. *See* DHHS Policy Statement, ACYF–PIQ–92–02, *revoked by* PA–01–01.

Under the federal policy, an example of an extenuating circumstance was a failure of a state or county agency "to advise adoptive parents of the availability of adoption assistance." *Gruzinski,* 731 A.2d at 256. In such a scenario, the adoptive parents had a right to a fair hearing after completion of the adoption to determine whether the child was eligible for assistance payments. *Id.* Noting that the primary goal of any adoption assistance program is the permanent and successful placement of special needs children, the court found the federal extenuating circumstances doctrine furthered the goals of the AOA, and adopted it as part of Pennsylvania law. Indeed, the court chastised the county agency for not "welcom[ing] the opportunity to provide this much needed and deserved entitlement." *Id.* Thus, and despite the request for adoption assistance occurring six years after finalization of the adoption, the Commonwealth Court held that the Gruzinskis "should not be penalized because [they] never had a legitimate chance to apply for adoption assistance before finalization, especially since CYS had a duty to notify the original prospective adoptive parents ... of [the child's] eligibility for adoption assistance and failed to do so." *Id.*

Since the *Gruzinski* decision, the Commonwealth Court on no less than three occasions has employed the extenuating circumstances doctrine to award adoption assistance, despite the passage of years since the finalization of the subject

adoption and the awarding of subsidies. *See Allegheny County Office of Children, Youth & Families v. DPW*, 912 A.2d 342 (Pa.Cmwlth.2006) (*Allegheny II*) (awarding subsidies two years after a private adoption under the extenuating circumstances doctrine); *Allegheny County Office of Children, Youth & Families v. DPW*, 800 A.2d 367 (Pa.Cmwlth.2002) (*Allegheny I*) (eight years, public adoption); *Ward v. DPW*, 756 A.2d 122 (Pa.Cmwlth.2000) (two years, private adoption).

The *Allegheny I* decision perfectly illustrates the classic extenuating circumstances scenario. There, Allegheny County CYF placed a child for adoption; the child unquestionably met all adoption subsidy requirements, yet CYF did not inform the adoptive parents of the availability of assistance because of a household income threshold employed internally by CYF. The adoptive parents later applied for subsidies, and CYF denied the application. On appeal, the Commonwealth Court found the failure of CYF to inform the parents of the child's eligibility for assistance at the time of finalization of the adoption, coupled with the denial of assistance due to the parents' household income, constituted extenuating circumstances, entitling the parents to a fair hearing on their request for subsidies.

In *Allegheny II*, a previously adopted ten-year old child was placed by a family with a private adoption agency, when the family no longer wished to care for the child. The private agency was able to locate a new adoptive family, and began to finalize the adoption. Prior to finalization, however, the new adoptive family attempted to procure adoption assistance subsidies through both the private agency and Allegheny County CYF, both of which declined the request. After the adoption concluded, the family again sought adoption assistance. In accord with *Allegheny I*, the Commonwealth Court found both the private agency and CYF at fault for not informing the family of the availability of subsidies (again, it was without question that the child was eligible for subsidies), applied the extenuating circumstances doctrine due to what it viewed as the county agency's wrongful denial of subsidies, and awarded assistance.

Finally, in *Ward*, a child placed through a private adoption agency was found to be eligible for adoption assistance despite Philadelphia DHS's non-involvement in the adoption process. Importantly in *Ward*, however, the precise issue decided by the Commonwealth Court did not revolve around the private nature of the adoption, but rather concerned whether the child's failure to meet all federal eligibility requirements precluded her from receiving state adoption assistance.[10] The court, in finding the child eligible for state subsidies, held that the federal requirements only concern whether county and state agencies will be reimbursed with federal money, and do not outright determine the eligibility for assistance. Thus, the court found the denial of adoption benefits improper, applied the extenuating circumstances doctrine, and ultimately ordered adoption subsidies for the child.

After review of the precedent, the Commonwealth Court in the instant appeal reinstated the ALJs' awards of retroactive and prospective subsidies to the Johnson and Laird children, "because the children meet the [Section 3140.202] requirements," and Section 3140.202(b) mandates that county agencies "shall" certify eligible children for subsidies. *Laird*, 972 A.2d at 601. The court found of no moment that the children were adopted through a private agency, or that Philadelphia DHS had no knowledge of the children's existence until years after the adoptions. Moreover, while no adoption assistance agreements were executed by the parties prior to the finalization of the adoptions, ARC's failure to inform Respondents "about the availability of subsides at the time of adoptions, which would have allowed them to make an informed decision regarding application for assistance," constituted an extenuating circumstance under *Gruzinski*. *Id.* The court then concluded that such failure could be attributed to DPW because ARC is a Pennsylvania-licensed agency. *Id.* Accordingly, the panel ordered the retroactive and prospective award of adoption subsidies.

10. As noted previously, the criteria for qualifying as an eligible child differs slightly between Pennsylvania and federal law.

President Judge Leadbetter concurred in the result, and filed a separate opinion. While concurring based upon principles of *stare decisis, i.e., Adoption ARC, Gruzinski,* President Judge Leadbetter stated that if left to her own devices, she would have reexamined the Commonwealth Court caselaw and redefined the extenuating circumstances doctrine to provide for relief only when necessitated by the individual nature and peculiarities of a case, as determined by evidence presented during a fair hearing, such as the adoptive parents' financial situation. In that light, she found that the instant case "graphically illustrates the shortsightedness of prior decisions in which, finding entitlement to adoption assistance and extenuating circumstances, we have automatically ordered payment of full retroactive benefits without discussion" of the circumstances attendant to the case. *Id.* at 602 (Leadbetter, P.J., concurring).

Both DPW (as primary appellant), and DHS (as intervenor), filed petitions for allowance of appeal, which we granted to consider the following issues:

*Issues raised by DPW at Docket Numbers 15 and 16 EAP 2010:*

(1) Whether the state Adoption Opportunities Act has an "extenuating circumstances" exception to the timely application requirement?

(2) Whether the federal act has such an exception, and if so, is it applicable on the facts here where no public agency created the "circumstances?"

(3) Whether affirmance of an order below is permissible regardless of whether a party raised the issue below?

*Issues raised by DHS at Docket Numbers 13 and 14 EAP 2010:*

(4) Where the applicable regulation under the Adoption Act requires that a Parent apply for adoption assistance prior to the finalization of adoption, and where the purpose of the Act is to promote adoption, did the Commonwealth

Court err in creating an equitable exception allowing a parent to apply for and obtain adoption subsides—both retroactively and prospectively—after the finalization of adoption, even though the Parent was willing to adopt without assistance?

(5) Where the Parents' agent has knowledge of the availability of adoption assistance, but inexplicably fails to inform the Parents of such availability until ten years after the deadline, did the Commonwealth Court err in awarding ten years of retroactive benefits, plus prospective benefits, by attributing such failure to [DPW]—and, in turn, [DHS]—merely because the Parent's agent was a DPW licensee, particularly where neither DPW nor DHS knew of the family's existence?

(6) Should this Court adopt [President] Judge Leadbetter's concurrence—which explained that the Commonwealth Court's decision here "graphically illustrates the short-sightedness of prior decisions" of the Commonwealth Court—and remand for equitable reduction or elimination of the retroactive adoption assistance award, given that the Parents' agent was aware of the availability of adoption assistance, given that the government was unaware of the Parents' existence, given how much time has passed since the deadline, and given the lack of showing that the Parents needed the assistance for the upbringing of the children?

See *Laird v. DPW,* 605 Pa. 464, 991 A.2d 882–83 (2010) (*per curiam* ).

We view issues (1) and (2), raised by DPW, as well as all three issues raised by DHS, as implicating the canons of statutory construction, to wit, whether the Pennsylvania AOA and accompanying regulations include the extenuating circumstances doctrine as forwarded by federal policy statements. Issues of statutory interpretation are pure questions of law; thus, our standard of review is *de novo,* and scope of review is plenary. *In re D.L.H.,* 606 Pa. 550, 2 A.3d 505, 513 (2010). The third issue raised by DPW, whether the Commonwealth Court should have entertained other considerations for affirm-

ing the Secretary's orders denying adoption assistance is also a pure question of law, implicating the same standard and scope of review. *See id.*

## II. The Extenuating Circumstance Doctrine

Keeping in mind the aforementioned statutory and regulatory law, as well as the recent jurisprudence from the Commonwealth Court, there are several statements of policy, from both the United States Department of Health and Human Services (DHHS) and DPW that at the outset we should discuss. As noted in *Gruzinski,* in 1992, DHHS issued policy statement ACYF–PIQ–92–02. That policy statement, the basis for the extenuating circumstances doctrine, stated that adoptive parents would be eligible for a fair hearing if a state agency charged with the administration of adoption subsides failed to notify adoptive parents of the availability of subsidies:

> The very purpose of the title IV–E adoption assistance program is to encourage the adoption of hard-to-place children. State notification to potential adoptive parents about its existence is an intrinsic part of the program and the incentive for adoption that was intended by Congress. Thus, notifying potential adoptive parents is the State agency's responsibility in its administration of the title IV–E adoption assistance program. Accordingly, the State agency's failure to notify the parents may be considered an "extenuating circumstance" which justifies a fair hearing.

PIQ–92–02, Question 3 (June 25, 1992).

In 1999, DPW issued its own policy bulletin, which echoed the federal policy statement:

> It is possible to file for a fair hearing and request adoption assistance after an adoption has been finalized. The types of situations which would constitute grounds for a fair hearing are found in federal policy at ACYF–PIQ–92–02 and ACYF–PIQ–90–02. State regulations are found at [55 Pa. Code] § 3140.210.
>
> These situations include:

* * *

3. an erroneous determination was made by the county agency regarding the child's eligibility status;

4. the county agency failed to advise the adoptive parents of the availability of adoption assistance.

Pennsylvania DPW, OCYF Bulletin 3140–99–01, Adoption Assistance Questions and Eligibility Issues, Question 33.

In January of 2001, however, in response to numerous inquiries from state agencies throughout the country, DHHS issued the aforementioned federal policy announcement ACYF–CB–PA–01–01 (January 23, 2001). PA–01–01 clarified several outstanding adoption assistance questions, while also revoking fifteen previously issued policy statements and interpretations. Among the revoked policy statements was the previously mentioned PIQ–92–02, which, together with related policy statements that need not be discussed to resolve the issue before us, created the extenuating circumstances doctrine and defined its applicability. Importantly, however, PA–01–01 did not abolish the extenuating circumstances doctrine; rather, it detailed various clarifications to it. First, it made explicit that federal adoption assistance "is available on behalf of a child if s/he meets all eligibility criteria and the State agency enters into an adoption assistance agreement with the prospective adoptive parent(s) *prior to* the finalization of the adoption." *Id.* (emphasis in original). PA–01–01 also clarified that children need not be in state or county custody to be eligible for adoption assistance: "The eligibility requirements for adoption assistance in section 473(a)(2) of the [federal Child Welfare] Act do not specify that the State title IV–E agency must have placement and care responsibility for the child to qualify for adoption assistance." *Id.*

Regardless of the public or private nature of the adoption, however, state and county agencies were (and are) required by federal law "to actively seek ways to promote the adoption assistance program. This means that it is incumbent upon the State agency to notify prospective adoptive parents about the availability of adoption assistance for the adoption of a child with special needs." *Id.* The basis for this active promotion of adoption subsidies is to insure that every effort is made to

place with permanent families, special needs children "who otherwise would grow up in State foster care systems...." *Id.* An important caveat was excepted, however, to these requirements:

However, in circumstances where the State agency does not have responsibility for placement and care, or is otherwise unaware of the adoption of a potentially special needs child, *it is incumbent upon the adoptive family to request adoption assistance on behalf of the child. It is not the responsibility of the State or local agency to seek out and inform individuals who are unknown to the agency about the possibility of title IV–E adoption assistance for special needs children who also are unknown to the agency.* This policy is consistent with the intent and purpose of the statute, and that is to promote the adoption of special needs children who are in the public foster care system.

*Id.* (emphasis added).

Before this appeal, this Court has never had the opportunity to construe the AOA, the Child Welfare Act, and the aforementioned federal policy statements in conjunction with the *Adoption ARC* and *Gruzinski* decisions.[11] Moreover, and as DPW and DHS rightfully note, the basis in *Gruzinski* for adopting the extenuating circumstances doctrine into Pennsylvania law was a federal policy statement, PIQ–92–02. Add in the fact that PIQ–92–02 has been replaced with PA–01–01, and we are faced with not just deciding the central question of

---

11. This Court has determined that the AOA is not preempted by the federal act. *See C.B. & J.B. v. DPW*, 567 Pa. 141, 786 A.2d 176 (2001). In *C.B.*, DPW raised a challenge to the award of adoption subsidies to a child who had been privately adopted. Specifically at issue was a provision of the Pennsylvania AOA, which mandates that a child be in the custody of the state or a state-approved agency at the time of adoption to be eligible for subsidies; the federal act contains no parallel provision. This Court found no preemption in large part because, while the federal act did not mandate state agency supported adoptions, "it [was] apparent that Congress contemplated agency custody as a proper measure of eligibility for adoption assistance," and further that "Congress expressly allowed the states participating in the federal program leeway to determine themselves, within certain broad parameters, which children ... are ... eligible for adoption assistance subsidies...." *Id.* at 183.

whether the award of subsidies to Appellees are appropriate in this instance, but further: (1) whether the extenuating circumstances doctrine exists at all in Pennsylvania; and (2) if so, whether the doctrine applies to private, state-licensed agencies and under what circumstances.

DPW first advocates (separately from DHS) that the extenuating circumstances doctrine is solely a creation of federal law, and has no relevance to this case, because no federal subsidy monies are at issue here.[12] In support thereof, DPW points to the enabling language within the Pennsylvania AOA, which charges DPW with promulgating all necessary regulations associated with implementing adoption subsidies. 62 P.S. § 773(b). DPW then argues that it has mandated, through these authorized regulations, that all subsidy agreements must be completed prior to or at the time of a court's issuance of a final adoption decree. 55 Pa.Code § 3140.203(a). Thus, DPW contends that the plain language of the regulations prohibit the extenuating circumstances doctrine from justifying an exception to the specific regulatory mandate.

Moreover, to the extent DPW has referred to the extenuating circumstances doctrine in its own regulations and accompanying policy statements and bulletins (such as Bulletin 3140–99–01), DPW interprets those references as only relating to federally subsidized adoptions. DPW then again asserts that federal adoption law is irrelevant in this case, and thus the federal extenuating circumstances doctrine, even as interpreted by DPW, is not applicable instantly. DPW avers that such an interpretation must be given great deference by this Court, as DPW is the agency charged with promulgating the regulations at issue. See St. Elizabeth's Child Care Center v. DPW, 600 Pa. 131, 963 A.2d 1274, 1277 (2009) ("The interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous.").

12. DPW notes that the parties have stipulated that federal reimbursement is not possible in this case. The reason for this stipulation, however, is not apparent from the record. However, neither is it germane to our final disposition of this appeal.

Appellants then jointly contend that, assuming, *arguendo,* that the extenuating circumstances doctrine is cognizable in Pennsylvania, it cannot be applicable in a situation where the county agency had no knowledge of the existence of the child at the time of adoption. First, according to Appellants, the plain language of both the AOA and Child Welfare Act, and their accompanying regulations, mandate that an adoption assistance agreement be in place at the time of adoption. *See* 55 Pa.Code § 3140.203(a); 42 U.S.C. § 675. Appellants contend that to find them at fault for not executing an agreement, when it would have been impossible given their lack of knowledge of the children's existence, is patently unfair and contrary to the primary goal of the Pennsylvania AOA: the encouragement and promotion of the adoption of children who but for subsidization would have languished in foster care, deprived of a permanent home. *See* 62 P.S. § 771. Indeed, Appellants note that the Lairds and Johnsons adopted their children without any subsidy or assistance, and to provide them with a subsidy now would amount to an unjust windfall, contrary to the purposes of the AOA, *see id.,* resulting in a waste of precious state and county funds.

Appellants further challenge the Commonwealth Court's conclusion that, in light of ARC being a duly licensed Pennsylvania adoption agency, any responsibility that ARC had in notifying Appellees of the availability of adoption subsidies for their children may be attributed to both DPW and DHS. Appellants note that if any private agency in Pennsylvania should have been aware of the availability of adoption subsidies in private adoptions that agency is ARC, as ARC was party to the 1999 Commonwealth Court decision validating subsidies in such cases. *See Adoption ARC,* 727 A.2d at 1215. Appellants contend that such knowledge should be placed with ARC, and "constructively imputed to [Appellees], and not to DPW or DHS." Brief of DHS at 25. Appellants conclude that the contentions by Appellees that DPW and DHS are at fault for not informing them of the availability of adoption subsidies are ludicrous because neither DPW nor DHS could have so informed Appellees at the time of the adoptions.

In response, Appellees argue that the extenuating circumstances doctrine should apply in Pennsylvania because children who satisfy the subsidy eligibility requirements of 55 Pa.Code § 3140.202(b) are eligible children as defined by the AOA's regulations and, in such circumstances, "the county agency *shall certify for adoption assistance*" the child. 55 Pa.Code § 3140.202(b) (emphasis added). While Appellees recognize, as they must, that the Pennsylvania and federal regulations mandate that adoption assistance agreements be in place prior to or at the time of finalization of the adoption, *see* 55 Pa.Code § 3140.203(a); 45 C.F.R. § 1356.40(b)(1), Appellees aver that the passage of time does not impact a child's legal right to adoption subsidies. Appellees aver that, because subsidies "shall" issue to an eligible child, the extenuating circumstances doctrine operates as the legal mechanism to ensure the receipt of adoption assistance by special needs children, "*nunc pro tunc.*" *Accord Riddle v. WCAB (Allegheny City Elec., Inc.)*, 603 Pa.74, 981 A.2d 1288, 1291 (2009) ("In its common usage as well as legal parlance, the phrase 'shall' is mandatory.").

Moreover, Appellees argue that DPW adopted the extenuating circumstances doctrine as part of the AOA's regulations in OCYF Bulletin 3140–99–01. As Appellees relate, Bulletin 3140–99–01 provides for fair hearings when "the county agency failed to advise the adoptive families of the availability of adoption assistance." *Id.* Appellees then conclude that the fair hearing provisions of Bulletin 3140–99–01 apply to public and private adoptions equally, as county agencies are charged with the implementation of adoption subsidies "not only for children who are in their care and custody, but for all children." *Gruzinski*, 731 A.2d at 254.

Regarding their children specifically, Appellees contend that the issue of fault or which entity was supposed to inform them about the availability of subsidies is of no moment. Rather, Appellees argue that their children constitute eligible children as defined by the AOA and its regulations, and are therefore entitled to adoption assistance. Thus, the extenuating circumstances doctrine, as delineated in federal and state regulations

and policy statements, is merely the mechanism to ensure vindication of this legal right and imperative.

## A. The *Adoption ARC* Decision

As a baseline to our resolution of these issues, we first take notice of the Commonwealth Court's 1999 decision in *Adoption ARC,* which reversed a then long-standing practice of generally denying adoption subsidies to children involved in private adoptions. None of the parties to this case challenge the propriety of the *Adoption ARC* decision, and, indeed, the holdings of that case appear to be supported by the plain language of the AOA, Section 772 ("A child in the legal custody of an agency approved by the department shall be an eligible child if the child is certified as eligible by the local authorities."), the state regulations, Section 3140.202(b)(3) ("The county agency shall certify for adoption assistance children whose placement goal is adoption and ... is in the legal custody of the county or another agency approved by the Department), and the federal Child Welfare Act, Section 473(a)(2). *See* PA–01–01 ("The eligibility requirements for adoption assistance in section 473(a)(2) of the Act do not specify that the State title IV–E agency must have placement and care responsibility for a child to qualify for adoption assistance."). Thus, to the extent necessary to resolve this appeal, we approve of the Commonwealth Court's holding in *Adoption ARC* that adoption subsidies are generally available in a private adoption, so long as the requirements of the above-mentioned statutory and regulatory provisions are met, but subject to the limitations articulated in Parts II.B and C, *infra.*

## B. Whether the Extenuating Circumstances Doctrine is Cognizable under Pennsylvania Law

As noted above, three months after the *Adoption ARC* decision, the Commonwealth Court adopted the extenuating circumstances doctrine as part of Pennsylvania law in *Gruzinski.* The *Gruzinski* Court held that the primary purpose of the Pennsylvania AOA (as well as the Child Welfare Act) was

to "promote the 'best interests of the child' principle by first locating the most suitable family and then determining whether or not adoption assistance is appropriate." 731 A.2d at 253. Based upon this, as well as the Pennsylvania regulation requiring county agencies to notify any prospective family about the availability of subsidies in all cases, the *Gruzinski* Court found PIQ–92–02, as it related to the extenuating circumstances doctrine, consistent with the goals of the Pennsylvania AOA and, accordingly, clarified that it should be part of Pennsylvania adoption law. Thus, under *Gruzinski*, when a county agency fails to inform a prospective family in this regard, the doctrine applies and fair hearings must be provided.

The holding of *Gruzinski* was then seemingly adopted by DPW in Bulletin 3140–99–01. Before this Court, however, DPW advocates that the doctrine, as related in Bulletin 3140–99–01, has no place in Pennsylvania law, but is rather merely a recitation of federal law. We do not accept this view.[13] As explicitly stated in the state regulations, county agencies are required to make adoption services, including assistance, available to children in their custody or the custody of other state-licensed agencies. 55 Pa.Code §§ 3130.36, 3140.202. Moreover, county agencies "*shall* certify for adoption assistance children" who meet the eligibility requirements of Section 3140.202(b), and further are the only entities permitted by law to make such a certification. *Id.* § 3140.202(a) (emphasis added). And, while adoption assistance agreements must be in place no later than the time of entry of final decree by a court, *see id.* § 3140.203(a); *see also*

13. Nor are we compelled to. While DPW argues that we must give its interpretation of the regulations great deference, *see St. Elizabeth's*, 963 A.2d at 1277 ("The interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous."), we decline to do so in this instance, because DPW has given no indication that its position regarding the extenuating circumstances doctrine was developed prior to this appeal. *Accord Malt Beverages Distributors Ass'n v. Pa. Liquor Control Bd.*, 601 Pa. 449, 974 A.2d 1144, 1154 (2009) (while recognizing the general rule of *St. Elizabeth's*, refusing to give deference to an agency interpretation of its own regulation, if such interpretation is "developed in anticipation of litigation.").

45 C.F.R. § 1356.40(b)(1), to decline parents or their adopted children the opportunity to apply for a fair hearing when a county agency wrongfully denies assistance or fails to inform a prospective family about the availability of assistance prior to adoption, appears patently unfair, and, indeed, the evil Section 3140.202(a) was designed to prevent. Accordingly, we find that the extenuating circumstances doctrine is applicable to the Pennsylvania adoption subsidy regulations in accord with DPW's express regulatory powers.

## C. Parameters of the Extenuating Circumstances Doctrine

As noted herein, the doctrine itself is a product of federal policy statement PIQ–92–02, which enumerated, non-inclusively, four circumstances in which a fair hearing would be appropriate:

(1) relevant facts regarding the child, the biological family or child's background are known and not presented to the adoptive parents prior to the legalization of the adoption; (2) denial of assistance based upon a means test of the adoptive family; (3) erroneous determination by the State that a child is ineligible for adoption assistance; and (4) failure by the State agency to advise adoptive parents of the availability of adoption assistance.

PIQ–92–02 at Question 5. The *Gruzinski* Court followed this construct in graphing the doctrine into Pennsylvania law, and, shortly thereafter, DPW repeated these four categories of scenarios nearly verbatim in Bulletin 3140–99–01. Notwithstanding the issuance of PA–01–01, which revoked PIQ–92–02, the above four categories delineating when a child who is not considered for subsidies before finalization of his or her adoption would be entitled to a fair hearing to determine if assistance should be retroactively awarded, remained and were re-affirmed. Concomitantly, within PA–01–01, DHHS added two new scenarios: "[the] decrease in the amount of adoption assistance without the concurrence of the adoptive parents; and denial of a request for a change in payment level

due to a change in the adoptive parents['] circumstances."
PA–01–01.

██ We find this clarification of the occasions in which the
extenuating circumstances doctrine applies consistent with the
statutory and regulatory mandates of the Pennsylvania AOA.
Certainly, in each of the scenarios, the county agency has
either shirked its statutory duty to provide adoption assistance
to eligible children, or, in the case of the new circumstances
provided by PA–01–01, the county agency is unilaterally alter-
ing the agreement between it and the adoptive parents. As a
matter of fundamental fairness, fair hearings should be pro-
vided in these circumstances.

Notwithstanding this conclusion, and of vital importance to
this appeal, the fourth circumstance, "failure by the State
agency to advise adoptive parents of the availability of adop-
tion assistance," is necessarily constrained by the plain lan-
guage of Pennsylvania regulations. Under Section
3140.202(c), county agencies, prior to the certification of adop-
tion assistance, "shall make reasonable efforts to find an
adoptive home without providing adoption assistance." 55
Pa.Code § 3140.202(c). Moreover, the agencies are required
to include evidence of a minimum of three months of these
"reasonable efforts." *Id.*[14] Further, a private, but state-li-
censed adoption agency, cannot be party to an adoption assis-
tance agreement; only a county agency and the prospective

14. While subsection (d) makes an exception to the "reasonable efforts"
rule if the best interests of the child so dictate, *i.e.* in a circumstance
where an adoptive family has already been found, *see* 55 Pa.Code
§ 3140.202(d), *supra* p. 1019 (providing it unnecessary to seek an
unsubsidized family in cases where a child has developed "significant
emotional ties with prospective adoptive parents" prior to finalization
of adoption), such does not alter a county agency's general responsibili-
ty to seek out, in the first instance, families not requiring subsidies. We
further recognize that in situations where private agencies such as ARC
are involved, prospective adoptive parents may well have been located
either prior to, or immediately following the child's birth. Indeed, and
by way of example, J.J.J. was placed with the Johnsons eight days after
his birth, although the adoption was not finalized until six months later.
Similar arrangements occurred with Alyssa and Addison Laird. Al-
though not determinative of this appeal, and we offer no substantive or
decisional comment on the matter, we note that the subsection (d)
exception could be satisfied in such circumstances.

parents may be. *Id.* § 3140.203(a). This requirement is, of course, reasonable, as the county agency is responsible for disbursing assistance funds. *See C.B. & J.B.,* 786 A.2d 176.

■ Put differently, whether an adoption is public or private, a county adoption agency has affirmative statutory and regulatory duties it must undertake prior to the consummation of an adoption, certain duties that, by the plain language of the Title 55 regulations, a private agency such as ARC cannot fulfill. In light of these duties, we cannot agree with Appellees that an extenuating circumstance exists, such that a fair hearing is required (or, even further, that subsidies should be awarded retroactively or prospectively), when a county agency or DPW does not know of the existence of the children prior to finalization of the adoption. This lack of knowledge prohibits the county agency from complying with either Section 3140.202(c) or 3140.203(a). Further, the new federal policy interpretation, PA–01–01, supports this conclusion:

> However, in circumstances where the State agency does not have responsibility for placement and care, or is otherwise unaware of the adoption of a potentially special needs child, it is incumbent upon the adoptive family to request adoption assistance on behalf of the child. It is not the responsibility of the State or local agency to seek out and inform individuals who are unknown to the agency about the possibility of title IV–E adoption assistance for special needs children who also are unknown to the agency.

PA–01–01.

■ Finally, we note that adoption subsidies were never intended to be windfalls for adoptive parents. We do not question the motives of the Lairds or the Johnsons; indeed, with the shortfall of persons willing to adopt special needs children, *see* Barbara L. Seaton, *Promoting the Adoption of Special Needs Children,* 17 WIDENER L.J. 469, 471 (2008), we applaud them for bringing these children into their homes originally without the need for, or availability of, assistance. Nevertheless, in light of the clear statutory and regulatory requirements placed upon DPW and county agencies, we

simply cannot conclude that a fair hearing, or a retroactive subsidy award, is appropriate where neither DPW nor the county agency knew of the existence of Appellees' adopted children at the time of entry of the final adoption decrees. To hold otherwise would turn the statutory purposes of the AOA and the accompanying regulatory scheme on their respective heads by vitiating the obvious need to locate (when possible) prospective adoptive parents who do not require a state or federal subsidy to raise a child. *Accord* 55 Pa.Code § 3140.202(c) & (d).

■ For all of these reasons, because neither DPW nor Philadelphia DHS knew of the existence of the Laird or Johnson children either before or at the time of adoption, we decline to find that the extenuating circumstances doctrine, as applicable under the Pennsylvania AOA and the accompanying regulations, applies instantly. Rather, and in order to effectuate fully the purposes of the AOA, and consistent with PA–01–01, prospective parents participating in a private adoption must initiate any inquiries regarding the availability of adoption subsidies with a county agency, like Philadelphia DHS, prior to the entry of a final adoption decree, in order for county agencies and parents alike to fulfill their respective statutory and regulatory mandates.

## III. Conclusion

The order of the Commonwealth Court is reversed, and the order of the Secretary of the Department of Public Welfare is reinstated.[15]

Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, TODD, McCAFFERY, and ORIE MELVIN join the opinion.

**15.** As there is no need to remand this case to any tribunal for further consideration, we need not consider the remaining issues raised by DPW (whether the Commonwealth Court erred in not affirming the decision of the Secretary on alternative grounds), or DHS (whether this Court should adopt the concurring opinion of President Judge Leadbetter below).