IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd and Stacey Myers,           :
          Petitioners      :
                           :
          v.              :  No. 506 C.D. 2015
                           :  Submitted: October 30, 2015
Department of Human Services,    :
          Respondent       :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ANNE E. COVEY, Judge

OPINION
BY JUDGE LEAVITT                FILED:  March 4, 2016

       Todd and Stacey Myers (Parents) petition for review of an order of the Department of Human Services, Bureau of Hearings and Appeals (Department) adopting the recommended adjudication of an Administrative Law Judge (ALJ). The ALJ recommended affirming the decision of Adams County Children and Youth Services (CYS) to deny Parents' request for an increase in the monthly adoption subsidy they receive for their child, T.M. (Child).  Discerning no error by the Department, we affirm.

       By way of background, The Federal Adoption Assistance and Child Welfare Act of 1980,[2] an amendment to Title IV–E of the Social Security Act, provides for assistance for "special needs" children who are adopted.[3]  In accordance with the federal act, each state must enact its own program to receive

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] 42 U.S.C. §§670–679(c).

[3] 42 U.S.C. §671.

this assistance.[4]  In Pennsylvania the law is commonly referred to as the Adoption Opportunities Act.[5]  It is intended to "promote the placement in adoptive homes of children who are physically and/or mentally handicapped, emotionally disturbed, or hard to place by virtue of age, sibling relationship or ethnicity."  Section 771 of the Adoption Opportunities Act, 62 P.S. §771.  Under the Act, an adopting family may apply for financial assistance on behalf of a child with such special needs, provided that the child meets certain eligibility standards.  Under the applicable regulation, a child with "[a] physical, mental or emotional condition or handicap" is eligible for adoption assistance.  55 Pa. Code §3140.202.[6]

---

[4] 42 U.S.C. §673.

[5] Act of June 13, 1967, P.L. 31, *as amended*, added by Section 1 of the Act of December 30, 1974, P.L. 1039, 62 P.S. §§771–774.

[6] In full, the child eligibility regulation states:

> (a) The county children and youth social service agency (county agency) is the sole authority for certifying a child's eligibility for adoption assistance.
>
> (b) The county agency shall certify for adoption assistance children whose placement goal is adoption and who meet the following requirements:
>
>> (1) The child is 17 years of age or younger.
>>
>> (2) Parental rights have been terminated under 23 Pa.C.S. Part III (relating to the Adoption Act).
>>
>> (3) The child is in the legal custody of the county agency or another agency approved by the Department.
>>
>> (4) The child shall have at least one of the following characteristics:
>>
>>> (i)   A physical, mental or emotional condition or handicap.
>>>
>>> (ii)   A genetic condition which indicates a high risk of developing a disease or handicap.
>>>
>>> (iii)  Be a member of a minority group.
>>>
>>> (iv)  Be a member of a sibling group.
>>>
>>> (v)   Be 5 years of age or older.

**(Footnote continued on the next page . . .)**

The Department's regulations further provide that the county agency and the prospective adopting parents must execute an adoption assistance agreement at the time of, or before, the court issues the final adoption decree. 55 Pa. Code §3140.203(a). For adoption assistance payments, "[t]he amount of the adoption assistance payment may not exceed the foster care maintenance payment which would have been paid if the child for whom the adoption assistance payment is made were living in a foster family home." 55 Pa. Code §3140.204(b)(1)(i).

With this background in mind, we turn to the facts of this case. Child was born on February 4, 2007, and taken into CYS's custody shortly thereafter. On August 8, 2007, CYS placed Child into foster care with Parents. From 2007 to 2011, CYS compensated Parents $40 per day ($1,200 per month) for foster care services. In April 2011, Child was diagnosed with Reactive Attachment Disorder.[7] Child was also diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), Pervasive Development Disorder (PDD), asthma and environmental allergies.

---

**(continued . . .)**

> (c) Prior to certification for adoption assistance, the county agency shall make reasonable efforts to find an adoptive home without providing adoption assistance. Evidence of this effort shall be recorded in the case record and include registration with the Department's adoption exchange for at least 3 months.

> (d) If it would be against the best interests of the child because of factors, such as the existence of significant emotional ties with prospective adoptive parents while in the care of the parents as a foster child, the requirement of subsection (c) does not apply.

55 Pa. Code §3140.202.

[7] The National Institutes of Health defines Reactive Attachment Disorder as "a problem with social interaction that occurs when a child's basic physical and emotional needs are neglected, particularly when the child is an infant." https://www.nlm.nih.gov/medlineplus/ency/article/001547.htm (last visited March 2, 2016).

On July 26, 2011, Parents executed an adoption assistance agreement with CYS. The agreement provided that CYS would continue making payments to Parents of $40 per day/$1,200 per month as an adoption assistance subsidy. Reproduced Record at 272a (R.R. __). The agreement stated, in pertinent part:

> C. The County certifies that the child is eligible for a Medicaid card. The County is not responsible for any medical, dental, prescription, psychological, psychiatric or other such services not covered by the medical assistance program unless they are specified in this agreement.
>
> * * *
>
> E. An adoption assistance subsidy cannot exceed the maximum foster care maintenance payment established by Adams County Children and Youth Services.
>
> * * *
>
> G. Once the adoption has been finalized, the adoptive parent(s) may use the adoption assistance payment in any way that incorporates the child into the family without Agency oversight or approval.
>
> * * *
>
> K. The terms of the Adoption Assistance may be re-negotiated at any point by The County of Adams or the adoptive parents while the Agreement is in effect. Changes must be made with the concurrence of both adoptive parents and the County. A change in the terms of the Agreement requires a new Agreement. The adoptive parents may request an increase in the amount of their subsidy due to changes in the needs of the child or due to the fact that the needs of the child were underestimated during the initial negotiations. The family must provide documentation related to changes in the needs of the child.
>
> L. It is understood that the County will not be liable for any costs incurred by the adoptive parent(s), which are not included in this Agreement.

4

R.R. 273a-74a. On September 5, 2011, Parents adopted Child and began receiving an adoption subsidy of $40 per day or $1,200 per month.

On June 10, 2014, Parents requested an increase in their adoption subsidy rate from $40 per day to $70 per day, *i.e.*, the maximum subsidy paid by CYS. Parents asserted that, prior to the adoption, CYS did not provide counseling or education on Reactive Attachment Disorder, its treatment, or identify a specialist capable of providing this treatment. Child had begun exhibiting the following behaviors: lack of age appropriate safety awareness; soiling and wetting inappropriately; lying; defiance; self-harm; aggression toward siblings and pets; raising fists in anger toward Parents; and destroying property. Child requires constant supervision and alarms on his bed. Parents fear that without specialized therapy, Child will never be able to care for himself and could end up in a residential treatment facility. CYS refused to increase Parents' subsidy, finding that their current monthly subsidy of $1,200 was sufficient. Parents appealed, and the ALJ conducted a hearing on November 20, 2014.

Parents presented Sue Cohick, CYS's administrator, as a witness. Cohick explained that each county is responsible for establishing its foster care and adoption subsidy amounts, which are approved by the Department. Notes of Testimony, 11/20/2014, at 69 (N.T. __); R.R. 124a. Currently, the rates available from CYS are $30 or $40 per day. A family's subsidy is reviewed on an annual basis. Cohick testified that other families in Adams County caring for a child with Reactive Attachment Disorder receive a subsidy of either $30 or $40 per day, depending upon the severity of the diagnosis. Cohick opined that a child with an acute chronic or permanent medical condition or physical disability who requires intensive home-based medical intervention on a 24-hour basis would receive the

5

$40 rate. Cohick testified that families are free to use the subsidy in any way they wish, for whatever purpose they decide, with no oversight by CYS. Cohick explained that because Parents received $40 per day while Child was in their foster care, that rate continued after they adopted him. This is consistent with the Department's regulations. If an adoptive family needs additional assistance with a child's special needs, CYS offers information on available post-adoption services such as respite care, support groups and other services through the Statewide Adoption and Permanency Network.

Cohick acknowledged that in 2013 CYS paid a subsidy of $70 per day to one family. This was for a paraplegic child unable to feed, clothe or bathe herself. This child had such severe, life-threatening medical needs that Life Lion, a medical helicopter transport service, moved its pickup location closer to the child's home in order to attend to her medical emergencies. However, effective July 1, 2014, CYS extinguished the $70 daily rate.

Following the hearing, the ALJ issued an adjudication recommending that Parents' appeal be denied. The ALJ found, based on Mrs. Myers' testimony, that in 2013 Parents earned $45,000 in taxable income and collected a $14,400 adoption subsidy, which is not taxable. The ALJ concluded that Parents had sufficient resources to pay $200-$220 for Child's biweekly visits to his psychologist; $350 every three months for visits to a neurologist in Philadelphia; and to pay for babysitters and for family vacations. Noting that in 2013 the Department denied Parents' appeal of CYS's refusal to increase Child's adoption subsidy from $40 to $70 per day, the ALJ held that the doctrine of *res judicata* prevented Parents from relitigating the terms of their adoption assistance

6

agreement.[8] The ALJ further found that CYS had paid the $70 per day subsidy on one occasion because of the child's severe medical needs and discontinued it in 2014 when the family left Adams County. Because CYS was paying Parents the maximum subsidy available to foster parents, the ALJ held that increasing that rate for Parents would violate 55 Pa. Code §3140.204(b)(1)(i). Parents appealed. On March 5, 2015, the Department entered an order adopting the ALJ's recommendation in its entirety. Parents petitioned for this Court's review.

On appeal,[9] Parents argue that the Department incorrectly focused on whether the denial of their requested increase in Child's subsidy was consistent with the regulations. Parents argue that the Department ignored substantial evidence that Child's needs were underestimated at the time of adoption and have increased in severity over time, thereby warranting a renegotiation of the adoption assistance agreement. Parents further contend that the Department erred in finding that the maximum subsidy was $40 per day when the maximum subsidy in Adams County was $70 per day at the time they appealed. Parents also argue that the Department erred in finding that they did not provide sufficient financial information to support their requested subsidy increase. Finally, Parents assert that the Department erred in concluding that their current subsidy of $40 per day is sufficient to incorporate Child into their family and cover unreimbursed medical expenses.

---

[8] None of the documentation from the 2013 appeal is included in the record.

[9] Our review is to determine whether the Department's adjudication is supported by substantial evidence, is in accordance with the law or whether constitutional rights were violated. *Adoption ARC, Inc. v. Department of Public Welfare*, 727 A.2d 1209, 1212 (Pa. Cmwlth. 1999).

Intervenor CYS counters that it correctly refused to increase the adoption subsidy for Child because the Department's regulation limited Parents to a maximum subsidy of $40 per day. CYS also contends that the $40 per day subsidy is sufficient to cover the costs of caring for Child.

As noted, the Department's regulation on adoption assistance payments states:

> The amount of the adoption assistance payment may not exceed the foster care maintenance payment which would have been paid if the child for whom the adoption assistance payment is made were living in a foster family home.

55 Pa. Code §3140.204(b)(1)(i). CYS's adoption assistance agreement, including the one signed by Parents, echoes the regulation: "An adoption assistance subsidy cannot exceed the maximum foster care maintenance payment established by [CYS]." R.R. 273a. Parents acknowledge that they received a foster care maintenance payment of $40 per day while Child was in their foster care. The evidence is also clear that $40 per day is the maximum subsidy available in Adams County, which is the maximum adoption assistance payment available to Parents.

That CYS paid a subsidy of $70 per month to one family in 2013 does not change the result. The child in that case was severely challenged by paraplegia and, simply, a unique case. Although Child suffers Reactive Attachment Disorder, he can talk, walk, feed and clothe himself and be home-schooled, without the need for a full-time caregiver in addition to Parents. Other children in Adams County diagnosed with this disorder receive either $30 or $40 per day depending upon the severity of the diagnosis. Assuming *arguendo* that $70 per day was the maximum subsidy available in 2014 when Parents requested an increase, that rate would have

8

only been available to Parents for a few weeks before it was extinguished on June 30, 2014.

In sum, the Department correctly determined that its regulation limited Parents' adoption assistance payment to $40 per day and we need not address Parents' other issues. Accordingly, the order of the Department is affirmed.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd and Stacey Myers,        :
               Petitioners    :
                             :
           v.                :   No. 506 C.D. 2015
                             :
Department of Human Services,    :
            Respondent    :

## **O R D E R**

AND NOW, this 4th day of March, 2016, the order of the Department of Human Services, Bureau of Hearings and Appeals, in the above-captioned matter dated March 5, 2015, is AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge